Federico Castelan Sayre, Esq.
Fernando F. Chavez, Esq.
Kent M. Henderson, Esq.
James R. Alsup, Esq.
**SAYRE & CHAVEZ**
900 North Broadway, 7th
Santa Ana, California 92701
Telephone: (714) 550-9117
Facsimile: (714) 550-9125

Horacio L. Barrera, Esq.
**MARTINEZ y BARRERA, L.L.P.**
1201 East Van Buren
Brownsville, Texas 78520
Telephone: (956) 546-7159
Facsimile: (956) 544-0602

United States District Court
Southern District of Texas
FILED

DEC 1 8 2001

Michael N. Milby
Clerk of Court

**B-01-208**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

| | |
|---|---|
| **GUILLERMO BERRIOCHOA LÓPEZ;** | ) |
| **TRANSPORTES INTERMEX, S.A. de** | ) |
| **C.V.; S' ANTONIO TRANSPORTES, S.A.** | ) |
| **de C.V.; JOSÉ SILVINO MAGAÑA** | ) |
| **LÓPEZ; JOSÉ ALFREDO MAGAÑA** | ) |
| **LÓPEZ; MIGUEL ÁNGEL DE LA ROSA** | ) |
| **SANCHEZ; SERVICIO TÉCNICO** | ) |
| **AUTOMOTRIZ PERISUR, S.A. de C.V.;** | ) |
| **TOMAS DE LA ROSA PARRA;** | ) |
| **ERNESTO VALLET HACES; MAX E.** | ) |
| **BARTON; CARLOS BERRIOCHOA,** | ) |

CIVIL CASE NO.

**COMPLAINT FOR DAMAGES FOR:**

Plaintiffs,

vs.

**NORMAN Y. MINETTA, Secretary of
Transportation;
MARY E. PETERS, Administrator,
Federal Highway Administration;
JOSEPH M. CLAPP, Administrator,
Federal Motor Carrier Safety
Administration; and Does 1-100, inclusive,**

_____Defendants_____

1. **VIOLATION OF FEDERAL
   CIVIL RIGHTS UNDER 42
   U.S.C.§1981;**

2. **VIOLATION OF FEDERAL
   CIVIL RIGHTS UNDER
   BIVENS**

**COMPLAINT FOR DAMAGES
PAGE -1**

## NATURE OF ACTION

Plaintiffs and proposed class representatives are Mexican citizens and residents of Mexico, who own, operate and/or have interests in Mexican businesses principally involved in the transport of goods over the highway in Mexico.  Plaintiffs have submitted or have sought to submit applications with the United States Department of Transportation for operating permits that would have allowed them to operate their trucks within the four border states of the United States, ie., California, Arizona, New Mexico and Texas, since December 18, 1995, and that would have allowed them to operate their trucks within the entire United States since January 1, 2000, and which was negotiated and adopted by the signatories to the North American Free Trade Agreement.  Plaintiffs have also sought to submit and have submitted applications with the United States Department of Transportation for the opportunity to invest in, own or control United States-domiciled trucking firms after December 18, 1995, which was negotiated and adopted by the signatories to the North American Free Trade Agreement.  Plaintiffs, on their own behalf, and on behalf of themselves individually and in their representative capacities, on behalf of a Class of all other similarly situated Mexican nationals who have submitted or have sought to submit applications with the United States Department of Transportation for operating permits that would have allowed them to operate their trucks within the four border states of the United States, ie., California, Arizona, New Mexico and Texas, since December 18, 1995; and, on behalf of a Class of all other similarly situated Mexican nationals who have submitted or have sought to submit applications with the United States Department of Transportation for operating permits that would have allowed them to operate their trucks within the entire United States since January 1, 2000; and, on behalf of themselves individually and in their representative capacities, on behalf of a Class of all other similarly situated Mexican nationals who have sought to submit and/or have submitted applications with the United States Department of Transportation for the opportunity to invest in, own or control United States-domiciled trucking firms after December 18, 1995, bring this action to address an ongoing and continuous pattern and

practice of unlawful discrimination on account of Mexican national origin, for violations against them by the Defendants in violation of the Equal Protection Clause of the United States Constitution; the Due Process Clause of the Fifth Amendment; the Civil Rights Act of 1991, as amended 42 U.S.C. § 1981; and the Proceedings in Vindication of Civil Rights, 42 U.S.C. § 1988.

Plaintiffs allege that the Defendants, for unlawful discriminatory reasons, employed policies, practices, patterns and procedures against them and other Mexican nationals similarly situtated based on their national origin between December 18, 1995, and the present date in the following areas: by Federal Regulation required Mexican nationals to identify their national origin on applications for operating permits to provide cross-boundry trucking services from December 18, 1995 to present, and used the basis of national origin to deny or not process the applications; by Federal Regulation required Mexican nationals to identify their national origin on applications for operating permits to provide cross-border and interstate trucking services from January 1, 2000, to present, and used the basis of national origin to deny or not process the applications; and, by Federal Regulation required Mexican nationals to identify their national origin on applications for investment in, ownership of or control of United States-domiciled trucking firms from December 18, 1995, to present; and used the basis of national origin to deny or not process the applications; by failing to properly consider any such applications; and, by failing to approve any such applications. All plaintiffs are suffering continuing harm and damages day-to-day up to the present time as defendants maintain the same unlawful practices on an ongoing basis.

## JURISDICTION AND VENUE

1.     This action arises under Title 42, United States Code, Section 1981 et seq. (Federal Civil Rights Act), the Equal Protection Clause of the United States Constitution, and the Due Process Clause of the Fifth Amendment of the United States Constitution. The jurisdiction of this court is, therefore, founded on federal question jurisdiction.

2.      Venue is proper in the Southern District of Texas, Brownsville Division. Plaintiffs are informed and believe that the unlawful acts and injury to the Class occurred within approximately a twenty mile distance of Ports of Entry located in the Southern and Western Districts of Texas, the District of New Mexico, the District of Arizona, and the Southern District of California.  The majority of unlawful acts and injury to the represented parties occurred within the Southern District of Texas at the Ports of Entry in Brownsville and Laredo, Texas.

## PARTIES

### A.      PLAINTIFFS

3.      Plaintiffs and proposed class representatives are Mexican citizens who have interest in, own and/or control businesses domiciled in Mexico principally involved in the transport of goods over the highway in Mexico, and across the border of the United States and Mexico for the limited purpose of delivery of goods to depots within a commercial zone of U.S. border towns, or who transport goods over the highway in Mexico to a depot within a border area in Mexico and drop off the goods to be transported across the border into the U.S.  Plaintiffs and proposed class representatives have attempted to obtain the required U.S. operating permits from the U.S. Department of Transportation to operate Mexican registered trucks for cross-boundry delivery within the four border states since December 18, 1995, and for cross-border operations within the United States since January 1, 2000, or have intended to do so, but for the futility of making an application that would not be considered.  [Subclass One].

4.      Plaintiffs and proposed class representatives are Mexican citizens who have sought to submit or who have submitted applications for investment in, ownership of, or control of United States-domiciled trucking firms from December 18, 1995, to the present date.  [Subclass Two].

5.      Plaintiff and proposed class agents, and proposed class representatives for Subclass One, JOSE SILVINO MAGAÑA LÓPEZ and JOSE ALFREDO MAGAÑA LÓPEZ, are Mexican citizens and residents of Mexico City, Mexico.  Plaintiffs JOSE

SILVINO MAGAÑA LÓPEZ and JOSE ALFREDO MAGAÑA LÓPEZ own a Mexican-domiciled trucking company known as S' ANTONIO TRANSPORTES, S.A. de C.V., that provides trucking services in Mexico and cross-border delivery to to depots within commercial zones of U.S. border towns, or to depots in Mexico to drop off loads for cross-boundry delivery to U.S. border towns, and principally the commercial zones located Brownsville andLaredo, Texas. Plaintiffs JOSE SILVINO MAGAÑA LÓPEZ *and* JOSE ALFREDO MAGAÑA LÓPEZ also individually own trucks that provide trucking services in Mexico and cross-border delivery to depots within commercial zones of U.S. border towns, or to depots in Mexico to drop off loads destined for cross-boundry delivery to U.S. border towns, and principally the commercial zones located in Brownsville and Laredo, Texas.

6.     Plaintiff and proposed class agent, and proposed class representative for Subclass Two, GUILLERMO BERRIOCHOA LOPEZ , is a Mexican citizen and a resident of Mexico City, Mexico. Plaintiff BERRIOCHA LOPEZ owns and operates a business known as TRANSPORTES INTERMEX, S.A. de C.V., which is principally involved in the transport of goods over the highway in Mexico. On June 30, 1999, BERRIOCHOA LOPEZ was forced to sell his interest in a U.S.-domiciled trucking firm because the operating permit for that firm was in jeopardy because the Defendants, by practice and policy, will deny such permits if a Mexican citizen has any ownership interest in a United States-domiciled trucking firm.

7.     Plaintiff TOMAS DE LA ROSA PARRA is a Mexican citizen and a resident of Mexico City, Mexico. Plaintiff TOMAS DE LA ROSA PARRA owns several trucks that provide trucking services in Mexico and cross-border delivery to depots within commercial zones of U.S. border towns, or to depots in Mexico to drop off loads destined for cross-boundry delivery to U.S. border towns, and principally the commercial zones located in Brownsville and Laredo, Texas.

8.     Plaintiff MIGUEL ANGEL DE LA ROSA SANCHEZ is a Mexican citizen and a resident of Mexico City, Mexico. Plaintiff MIGUEL ANGEL DE LA ROSA

SANCHEZ owns several trucks that provide trucking services in Mexico and cross-border delivery to depots within commercial zones of U.S. border towns, or to depots in Mexico to drop off loads destined for cross-boundry delivery to U.S. border towns, and principally the commercial zones located in Brownsville and Laredo, Texas.

9.    Plaintiff SERVICIO TECNICO AUTOMOTRIZ PERISUR, S.A. de C.V., is a Mexican corporation which is principally involved in the transport of goods over the highway in Mexico. It provides trucking services in Mexico and cross-border delivery to depots within comercial zones of U.S. border towns, or to depots in Mexico to drop off loads destined for cross-boundry delivery to U.S. border towns, and principally the commercial zones located in Brownsville and Laredo, Texas.

10.    Plaintiff ERNESTO VALLET HACES is a Mexican Citizen and resident of Mexico. Plaintiff ERNESTO VALLET HACES owns several trucks that provide trucking services in Mexico and cross-border delivery to depots within commerical zones of U.S. border towns, or to depots in Mexico to drop off loads destined for cross-boundry delivery to U.S. border towns, and principally the commerical zones located in Brownsville and Laredo, Texas.

11.    Plaintiff MAX E. BARTON is a Mexican Citizen and resident of Mexico. Plaintiff MAX E. BARTON owns several trucks that provide trucking services in Mexico and cross-border delivery to depots within commerical zones of U.S. border towns, or to depots in Mexico to drop off loads destined for cross-boundry delivery to U.S. border towns, and principally the commerical zones located in Brownsville and Laredo, Texas.

12.    Plaintiff CARLOS BERRIOCOHA is a Mexican Citizen and resident of Mexico. Plaintiff CARLOS BERRIOCHOA owns several trucks that provide trucking services in Mexico and cross-border delivery to depots within commerical zones of U.S. border towns, or to depots in Mexico to drop off loads destined for cross-boundry delivery to U.S. border towns, and principally the commerical zones located in Brownsville and Laredo, Texas.

## B.   DEFENDANTS

13.   Plaintiffs are informed and believe that DEFENDANT SECRETARY OF TRANSPORTATION, NORMAN Y. MINETTA, is a resident of Washington, D.C.  The Department of Transportation is responsible through the Federal Motor Carrier Safety Administration for issuance of motor carrier operating authority for the transport of goods over the highway in the United States of America.

14.   Plaintiffs are informed and believe that DEFENDANT ADMINISTRATOR OF FEDERAL HIGHWAY ADMINISTRATION,  MARY E. PETERS, is a resident of Washington, D.C.  From December 31, 1995 through December 31, 1999, the safety and economic aspects of motor carriers were regulated by the Federal Highway Administration within the U.S. Department of Transportation.

15.   Plaintiffs are informed and believe that DEFENDANT ADMINISTRATOR OF THE FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,  JOSEPH M. CLAPP, is a resident of  Washington, D.C.  From January 1, 2000. to the present, jurisdiction over most motor carrier regulations is the responsibility of the Federal Motor Carrier Safety Administration within the U.S. Department of Transportation.

### CLASS ACTION ALLEGATIONS

16.   This action is properly maintainable under Fed. R. Civ. P. 23(a)(1)-(4) and, as appropriate, Rule 23(b)(1), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

17.   This action is properly maintainable as a class action under Rule 23(a) because:

(a) the class includes more than 200 Mexican nationals who have sought to submit or have submitted the appropriate applications to Defendants between December 18, 1995 and the present date, either for authorization to provide cross-boundry or cross-border trucking services, or who have sought authorization to invest as a Mexican national in a U.S.-domiciled trucking firm between December 18, 1995 and the present date, which is a sufficient number to make joinder of all members impractable;

COMPLAINT FOR DAMAGES<br>PAGE -7

(b) the claims alleged on behalf of the class raise questions of law or fact
common to the class;

(c) the claims alleged on behalf of the class are typical of the claims of the
class; and,

(d) the class representative and counsel to the class will adequately and
fairly protect the interest of the class.

18.    This action is properly maintainable as a class action under Rule 23(b)(2)
because Defendant has acted on grounds generally applicable to the class, thereby making
final injunctive relief and/or corresponding declaratory relief with respect to the class as a
whole.

19.    Superiority.  Rule 23 (b)(3) of the Fed. R. Civ. P.  A class action is superior
to other available methods for the fair and efficient adjudication of this litigation since
individual litigation of the claims of proposed class representatives regarding the
Defendant's institutional and systematic deprivation of their civil rights as described in this
Complaint is impracticable, would constitute an unjustified expenditure of precious judicial
time, as well as causing an unjustifieable wase of precious economic resources.  Even if
every class member could afford individual litigation, our federal court system could not.
It would be unduly burdensome to the federal courts as well as to the Plaintiffs and
proposed class representatives (who are by definition Mexican citizens who reside in
Mexico and who are unfamiliar with the judicial process of the United States) in which
individual litigation of the facts of not fewer than 200 to possibly 1500 cases would
proceed.  Individual litigation further presents a potential for inconsistent or contradictory
judgments and increases the delay and expenses to all parties and the court system in
resolving the legal and factual issues of the case.  By contrast, the class action device
presents far fewer management difficulties and provides the benefits of single adjudication
of what essentially is one legal issue, achieves economies of scale, and comprehensive
supervision by a single court.  Notice of the pendency of any resolution of this class action
can be provided to proposed class representatives by publication and broadcast.  In

addition, the Defendant has identifying information and contact materials on many of the Plaintiffs in its system of records, and, as such, the information is readily available.

20.     Plaintiffs, potential class agents and potential class representatives request that the court certify a class that consists of all named Plaintiffs, class agents and proposed class representatives who are Mexican nationals who were denied by the Defendants either, as to Subclass One, the opportunity to provide cross-boundry or cross-border trucking services from December 18, 1995, to the present date, or, as to Subclass Two, the opportunity to invest in, own or control a U.S.-domiciled trucking firm from December 18, 1995, to the present date.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

21.     Plaintiffs, proposed class agents and proposed class representatives on behalf of themselves, individually, and on behalf of all others similarly situated in their representative capacities, reallege all paragraphs above as if fully set forth herein.

22.     The Bus Regulatory Reform Act of 1982 created a moratorium against issuance of new motor carrier operating authority to foreign carriers by the Interstate Commerce Commission.  The 1982 Act was supplemented by a Presidential Memorandum signed on September 20, 1982, excluding application of the Bus Regulatory Reform Act of 1982 moratoriam against carriers from Canada.  The Presidential Memorandum specifically declared that the moratorium would be enforced against carriers from Mexico.

23.     The September 20, 1982, Presidential Memorandum was extended uniterupted with respect to Mexican trucking companies in 1984, 1986, 1988, 1990, 1992 and 1995.

24.     In 1995, the responsibilities of the Interstate Commerce Commission to issue motor carrier operating authorities were transferred to the Department of Transportation, under the ICC Termination Act of 1995.  The 1995 Act extended the validity of any restrictions on operations of motor carriers domiciled in a foreign country or owned or controlled by persons of a foreign country imposed under the United States

Regulatory Reform Act of 1982. The legislation preserved the moratorium and authoritiy to modify or remove it.

25.     The United States was trying to encourage Mexico and Canada to lift their restrictions on market access for U.S. firms. The U. S. Congress imposed a two-year initial moratorium on foreign carriers under the ICC Termination Act of 1995, which could be removed or modified if such an action was in accord with the national interest, and if the foreign country began providing reciprocal access.

26.     During 1995, the moratorium continued in place against Mexico, but there were certain exceptions. The first exception, to facilitate cross-border trade, allowed Mexican carriers to enter the commercial zone of U.S. border towns. The second exception allowed Mexican carriers to transit the U.S. to Canadian destinations. Under 49 U.S.C. § 13501, the Department of Transportation's jurisdiction is limited to requiing operating authorization from carriers operating between states of the United States or between a state of the United States and a foreign country. Congress has not granted the Department of Transportation the authority to require trucks transiting from Mexico to Canada to seek operating authority. Mexican carriers continue to have transit rights across the United States to destinations in Canada. The third exception was for "grandfathered" Mexican trucking companies that had acquired operating authority prior to 1982, when the moratorium came into effect, are not affected by the moritorium. Approximately five Mexican carriers are entitled to this exemption. The fourth  and final exception to the moritorium is for U.S.-owned, Mexican-domiciled truck companies.

27.     On December 18, 1992, Canada, Mexico and the United States signed the North American Free Trade Agreement (NAFTA). NAFTA came into force on January 1, 1994. Under Annex I of NAFTA, the parites to the agreement agreed that with respect to cross-border trucking service, a Mexican national would be permitted to obtain operating authority to provide cross-boundry trucking services in the four border states three years after the signing of NAFTA, or December 18, 1995, and cross-border trucking services

throughout the United States six years after the date of entry into force of NAFTA, or January 1, 2000.

28.    Morover, Annex I provided that with respect to investment by foreign nationals in U.S. domiciled trucking firms, a Mexican national would be able to invest in such a firm three years after the signing of NAFTA, or December 18, 1995.

29.    Despite the efforts of committies to implement a program for making compatible the relevant standards for medical, vehicular and safety compliance provisions contained in NAFTA, and despite public statements by U.S. representatives that the NAFTA provisions would be met, the U.S. Secretary of Transportation issued a press release on December 18, 1995, which stated that although Mexico and the United States were working to improve Mexican truck safety, because it was not yet a completed process, the U.S. would accept and process applications from Mexican trucking firms, but that the applicatons would not be finalized.  Since that statement, no application by a Mexican national has been finalized, and the moritorium in effect in 1995 has remained in place to this date since December 18, 1995.

30.    In the same press release of December 18, 1995, the Secretary of Transportation announced that beginning on December 18, 1995, Mexican nationals would be allowed to invest in U.S. carriers engaged in international commerce.  To date, the Department of Transportation maintains a complete ban on Mexican nationals owning or controlling U.S. cargo and passenger motor carrier service providers.  The ban is enforced by the application form for new operating authority, which requires that the applicant certify that the applicant is not a Mexican national, and the carriers are not owned or controlled by Mexican nationals.  Moreover, to gain approval of an application to acquire an existing motor carrier, the Department of Transportation also requires tha the applicant indicate whether the party acquiring rights is either domiciled in Mexico or the carrier is owned or controlled by Mexican nationals.  These requirements are codified at 49 Code of Federal Regulations, section 1182.2(a)(10).  The application operates as a ban because the applications would not be approved if they indicated Mexican ownership.

31.     In September 1998, Mexico formally requested the formation of an arbitral panel to hear the dispute of whether  by failing to phase out U.S. restrictions on cross-border trucking and on mexican investment in the U.S. trucking industry, the U.S. was in violation of the national treatment and most-favored-nation provisions contained in NAFTA.  The United States, Canada and Mexico formally participated in the hearings of the panel, and a Final Report was issued on February 1, 2001.

32.     According to the February 1, 2001, Final Report of the Arbitral Panel established to address the matter of Cross-Border Trucking Services, as of July 20 1999, the U.S. Department of Transportation had received 184 applications from Mexican nationals to provide cross-border cargo service into the border states.  None have been approved.

33.     According to the Final Report of the Arbitral Panel, the Panel found that Mexico asserted and that the United States conceded that U.S. laws and regulations authorize the Department of Transportation to deny a newly created U.S. domiciled carrier with Mexican investment the opportunity to obtain operating authority.  The same laws and regulations operate to deny an existing U.S. carrier to operate if an applicant is a Mexican national, or if the carrier is controlled or owned by Mexican nationals.  The Panel found that under the circumstances, an application filed by a Mexican carrier would be futile.

## FIRST CAUSE OF ACTION

**(For Violation of Federal Civil Rights under 42 U.S.C. § 1981 against all defendants.)**

34.     Plaintiffs refer to paragraphs 1 through 33, inclusive, and by this reference incorporate said paragraphs as though fully set forth herein.

35.     At all times herein, Plaintiffs' were Mexican citizens, who attempted to or intended to do business in the United States and who are entitled to the rights and privileges afforded to them under the United States Constitution.

36.     As a direct and proximate result of Defendants' actions and ommissions as alleged herein, which were conducted under the color of law, the plaintiffs have been

deprived of their rights and privleges under the Equal Protection Clause and the Fifth
Amendment of the U.S. Constitution.

37.    Plaintiffs JOSE SILVANO MAGAÑA LÓPEZ and JOSE ALFREDO
MAGAÑA LÓPEZ, as representatives of the Class [Subclass One], and individually, did
submit or have intended to submit applications with the Department of Transportation for
the purpose of obtaining a motor carrier operating permit to allow their Mexican trucks into
the United States to operate in cross-border, and, after January 1, 2001, to operate
interstate within the United States.  Such applications were not considered by Defendants,
or Plaintiffs' understood that would be futile to submit such applications as citizens of
Mexico because Defendants refused to consider applications made by Mexican citizens.

38.    Plaintiff GUILLERMO BERRIOCHOA LOPEZ, as representative of the
Class [Subclass Two], and individually, had submitted or had intended to submit an
application in accordance with 49 C.F.R. § 1182.2(a)(10).  Such application was not
considered by Defendants, or Plaintiff understood that it would be futile to submit such an
application as a Mexican citizen because Defendants refused to consider applications made
by Mexican citizens.

39.    Plaintiff GUILLERMO BERRIOCHOA LOPEZ has intended to submit an
application required by certain regulations of the Department of Transportation for the
opportunity to invest in U.S.-domiciled trucking companies.  Such applications required the
indication and certification that they were of Mexican national origin, or citizens of the
Republic of Mexico.  Plaintiff BERRIOCOHA LOPEZ has not submitted any such
application because it would be futile to do so as a Mexican citizen.

40.    Defendants MINNETA, PETERS and CLAPP, as a matter of policy and as a
pattern of practice and custom, have knowingly and with deliberate indifference failed to
approve applications for new and existing motor carrier operating permits made and
submitted by persons of Mexican national origin, and have discriminated against those
persons by reason of their national origin, resulting in the violation of the plaintiff's rights
under the Equal Protection Clause and the Due Process Clause of Fifth Amendment of the

United States Constitution, and the plaintiff's federal civil rights under 42 U.S.C. section 1981, et seq.

41.     Defendants MINNETTA, PETERS and CLAPP, as a matter of policy and as a pattern of practice and custom, have knowingly and with deliberate indifference failed to approve applications made and submitted by persons of Mexican national origin, for the opportunity to invest in, control or own U.S. domiciled trucking companies, and have discriminated against those persons by reason of their national origin, resulting in the violation of the plaintiff's rights under the Equal Protection Clause and the Due Process Clause of Fifth Amendment of the United States Constitution, and the plaintiff's federal civil rights under 42 U.S.C. section 1981, et seq.

42.     Plaintiffs request that the Defendants jointly and severally be ordered to compensate plaintiffs for the injuries resulting from this gross and continuing violation of civil rights, and attorney's fees incurred in the pursuit of this claim, punitive dmages to punish and make an example of the defendants and for such additional relief as the court deems proper and just.

## SECOND CAUSE OF ACTION

**(For Violation of Federal Civil Rights under BIVENS against all defendants.)**

43.     Plaintiffs refer to paragraphs 1 through 42, inclusive, and by this reference incorporate said paragraphs as though fully set forth herein.

44.     At all times herein, Plaintiffs' were Mexican citizens and are entitled to the rights and privileges afforded to them under the United States Constitution.

45.     As a direct and proximate result of Defendants' actions and ommissions as alleged herein, which were conducted under the color of law, the plaintiffs have been deprived of their rights and privleges under the Equal Protection Clause and the Fifth Amendment of the U.S. Constitution.

46.     Plaintiffs JOSE SILVANO MAGAÑA LOPEZ and JOSE ALFREDO MAGAÑA LOPEZ, as representatives of the Class [Subclass One], and individually, did submit or have intended to submit applications with the Department of Transportation for

the purpose of obtaining a motor carrier operating permit to allow their Mexican trucks into the United States to operate in cross-border, and, after January 1, 2001, to operate interstate within the United States. Such applications were not considered by Defendants, or Plaintiffs' understood that would be futile to submit such applications as citizens of Mexico because Defendants refused to consider applications made by Mexican citizens.

47.     Applications submitted applications in accordance with 49 C.F.R. § 1182.2(a)(10) require the applicants to indicate and certify that they are of Mexican national origin, or citizens of the Republic of Mexico. None of the applications have been approved.

48.     Plaintiff GUILLERMO BERRIOCHOA LOPEZ, as representative of the Class [Subclass Two], and individually, had submitted or had intended to submit an application in accordance with 49 C.F.R. § 1182.2(a)(10). Such application was not considered by Defendants, or Plaintiff understood that it would be futile to submit such an application as a Mexican citizen because Defendants refused to consider applications made by Mexican citizens.

49.     Plaintiff GUILLERMO BERRIOCHOA LOPEZ has intended to submit an application required by certain regulations of the Department of Transportation for the opportunity to invest in U.S.-domiciled trucking companies. Such applications required the indication and certification that they were of Mexican national origin, or citizens of the Republic of Mexico. Plaintiff BERRIOCHOA LOPEZ has not submitted any such application because it would be futile to do so as a Mexican citizen.

50.     Defendants MINNETA, PETERS and CLAPP, as a matter of policy and as a pattern of practice and custom, have knowingly and with deliberate indifference failed to approve applications for new and existing motor carrier operating permits made and submitted by persons of Mexican national origin, and have discriminated against those persons by reason of their national origin, resulting in the violation of the plaintiff's rights under the Equal Protection Clause and the Due Process Clause of Fifth Amendment of the United States Constitution.

51.    Defendants MINNETTA, PETERS and CLAPP, as a matter of policy and as a pattern of practice and custom, have knowingly and with deliberate indifference failed to approve applications made and submitted by persons of Mexican national origin, for the opportunity to invest in, control or own U.S. domiciled trucking companies, and have discriminated against those persons by reason of their national origin, resulting in the violation of the plaintiff's rights under the Equal Protection Clause and the Due Process Clause of Fifth Amendment of the United States Constitution.

## PRAYER

WHEREFORE, PLAINTIFFS, for each and every cause of action above, demand the following relief, jointly and severally, against all of the defendants as follows:

a)    Compensatory general and special damages in amount in accordance with proof;

b)    Reasonable attorneys' fees and expenses of litigation, including those fees permitted by 42 U.S.C. § 1988;

c)    Costs of suit necessarily incurred herein;

d)    Prejudgment interest according to proof; and

e)    Such further relief as the Court deems just or proper.


Dated: December 17, 2001                    SAYRE & CHAVEZ

                                            By: _____
                                            Federico Castelan Sayre, Esq.
                                            Attorneys for Plaintiffs
                                            ST BAR OF CALIFORNIA # 067420


Dated: December 17, 2001                    MARTINEZ y BARRERA, L.L.P

                                            By: _____
                                            Horacio L. Barrera, Esq.
                                            Attorneys for Plaintiffs
                                            ST. Bar # 01805800
                                            Fed ID. # 1941

**COMPLAINT FOR DAMAGES**
**PAGE -16**

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

————————— DISTRICT OF —————————

GUILLERMO BERRIOCHOA LOPEZ; TRANSPORTES INTERMEX,
S.A. DE C.V.; S' ANTONIO TRANSPORTES, S.A. DE C.V.;
JOSE SILVINO MAGANA LOPEZ; JOSE ALFREDO MAGANA LOPEZ;
MIGUEL ANGEL DE LA ROSA SANCHEZ; SERVICIO TECNICO
AUTOMOTRIZ PERISUR, S.A. DE C.V.; TOMAS DE LA ROSA
PARRA; ERNESTO VALLET HACES; MAX E. BARTON; CARLOS
BERRIOCHOA                          V.

**SUMMONS IN A CIVIL CASE**

NORMAN Y. MEINETTA, SECREATARY OF TRANSPORTATION;
MARY E. PETERS, ADMINISTRATOR, FEDERAL HIGHWAY ADMINISTRATION
JOSEPH M. CLAPP, ADMINISTRATOR, FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION; AND DOES 1-100, INCLUSIVE

CASE NUMBER: B -01- 208

TO: (Name and address of defendant)

MARY E. PETERS, ADMINISTRATOR
FEDERAL HIGHWAY ADMINISTRATION
US DEPARTMENT OF TRANSPORTATION
400 SEVENTH ST. S.W.
WASHINGTON, D.C. 20590

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MR. FEDERICO CASTELAN SAYRE, ESQ.
MR. FERNANDO F. CHAVEZ, ESQ.
SAYRE & CHAVEZ
900 NORTH BROADWAY, 7TH
SANTA ANA, CALIFORNIA 92701

MR. HORACIO L. BARRERA
MARTINEZ Y BARRERA
1201 EAST VAN BUREN
BROWNSVILLE, TEXAS 78520

an answer to the complaint which is herewith served upon you, within _____60_____ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

**Michael N. Milby, Clerk**

_____
CLERK

_December 18, 2001_
DATE

_____
(BY) DEPUTY CLERK

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

——————————————— DISTRICT OF ———————————————

GUILLERMO BERRIOCHOA LOPEZ; TRANSPORTES INTERMEX,
S.A. DE C.V.; S' ANTONIO TRANSPORTES, S.A. DE C.V.;
JOSE SILVINO MAGANA LOPEZ; MIGUEL ANGEL DE LA ROSA
SANCHEZ; SERVICIO TECNICO AUTOMOTRIZ PERISUR, S.A.
DE C.V.; TOMAS DE LA ROSA PARRA; ERNESTO VALLET
HACES; MAX E. BARTON; CARLOS BERRIOCHOA

V.

NORMAN Y. MINETTA, SECRETARY OF TRANSPORTATION;
MARY E. PETERS, ADMINISTRATOR, FEDERAL HIGHWAY
ADMINISTRATION; JOSEPH M. CLAPP, ADMINISTRATOR,
FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; AND
DOES 1-100, INCLUSIVE

## SUMMONS IN A CIVIL ACTION

CASE NUMBER: B - 01 - 208

TO: (Name and Address of Defendant)
    MR. NORMAN Y. MINETTA, SECRETARY OF TRANSPORTATION
    US DEPARTMENT OF TRANSPORTATION
    400 SEVENTH ST. S.W.
    WASHINGTON, D.C. 20590

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

| | |
|---|---|
| MR. FEDERICO CASTELAN SAYRE, ESQ. | MR. HORACIO L. BARRERA |
| MR. FERNANDO CHAVEZ, ESQ | MARTINEZ Y BARRERA |
| SAYRE & CHAVEZ | 1201 EAST VAN BUREN |
| 900 NORTH BROADWAY, 7TH | BROWNSVILLE, TEXAS 78520 |
| SANTA ANA, CALIFORNIA 92701 | |

an answer to the complaint which is herewith served upon you, within _____60_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

Michael N. Milby, Clerk

_____
CLERK

December 18, 2001
_____
DATE

_____
BY DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

─────────────────────── DISTRICT OF ───────────────────────

GUILLERMO BERRIOCHOA LOPEZ; TRANSPORTES INTERMEX, S.A.
DE C.V.; S'ANTONIO TRANSPORTES, S.A. DE C.V.; JOSE
SILVINO MAGANA LOPEZ; JOSE ALFREDO MAGANA LOPEZ; MIGUEL
ANGEL DE LA ROSA SANCHEZ; SERVICIO TECNICO AUTOMOTRIZ
PERISUR, S.A. DE C.V.; TOMAS DE LA ROSA PARRA;
ERNESTO VALLET HACES; MAX E. BARTON; CARLOS BERRIOCHOA
                                    V.
NORMAN Y. MINETTA, SECRETARY OF TRANSPORTATION;
MARY E. PETERS, ADMINISTRATOR, FEDERAL HIGHWAY ADMINISTRATION;
JOSEPH M. CLAPP, ADMINISTRATOR, FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION; AND DOES 1-100, INCLUSIVE

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: **B - 01 - 20 8**

TO: (Name and address of defendant)

JOSEPH M. CLAPP, ADMINISTRATOR, FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION
US DEPARTMENT OF TRANSPORTATION
400 SEVENTH ST. S. W.
WASHINGTON, D.C. 20590

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MR. FEDERICO CASTELAN SAYRE, ESQ.
MR. FERNANDO F. CHAVEZ, ESQ.
SAYRE & CHAVEZ
900 NORTH BROADWAY, 7TH
SANTA ANA, CALIFORNIA 92701

MR. HORACIO L. BARRERA
MARTINEZ Y BARRERA
1201 EAST VAN BUREN
BROWNSVILLE, TEXAS 78520

an answer to the complaint which is herewith served upon you, within _____ *60* _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael N. Milby, Clerk

_____
CLERK

December 18, 2001

_____
DATE

_____
(BY) DEPUTY CLERK