*12*

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 3 0 2002

Michael N. Milby
Clerk of Court

GUILLERMO BERRIOCHA LOPEZ, *et al.,* )
)
      Plaintiffs, )
)
      v. )  C.A. No. B-01-208
)
NORMAN Y. MINETA, Secretary of the )
Department of Transportation, *et al.,* )
)
      Defendants. )
_____)

## MOTION TO DISMISS

Pursuant to Rules 12(b)(1)-(3) and (6) of the Federal Rules of Civil Procedure and Local Rule 7, individual defendants Norman Y. Mineta, Joseph M. Clapp and Mary E. Peters move to dismiss the complaint filed against them in the captioned case. The following independent bases warrant dismissal:

> (1)  Plaintiffs have no private right of action for damages against individual federal officials to remedy alleged constitutional or other violations associated with the North American Free Trade Agreement.

> (2) Plaintiffs have failed to establish personal jurisdiction over any defendant, and venue is not proper in this court.

> (3)  There is no *respondeat superior* liability in constitutional tort cases.

> (4)  Plaintiffs have failed to articulate a clearly established constitutional right, and defendants therefore are entitled to qualified immunity.

The specific grounds for this motion are set forth in defendants' supporting memorandum, and Exhibits A-C, filed concurrently

*12*

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

MAY 3 0 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GUILLERMO BERRIOCHA LOPEZ, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. B-01-208 |
| | ) | |
| NORMAN Y. MINETA, Secretary of the | ) | |
| Department of Transportation, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . 1

**BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . 1

**PLAINTIFFS' ALLEGATIONS** . . . . . . . . . . . . . . . . 6

**DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . 9

I.   <u>There is No Private Right of Action for Damages</u>
     <u>Against Federal Officials to Remedy the Allegedly</u>
     <u>Unconstitutional Treatment of Plaintiffs In the</u>
     <u>Implementation of NAFTA</u> . . . . . . . . . . . . . . 9

A.   <u>Plaintiffs Cannot Rely on NAFTA to Support Any Claim</u> . . . 9

B.   <u>Plaintiffs Have No Implied Right of Action under the</u>
     <u>Constitution</u> . . . . . . . . . . . . . . . . . . . . 10

     1.  Congress Has Explicitly Precluded a Cause of Action   12

     2.  Special Factors Preclude Judicial Recognition of
         a Cause of Action . . . . . . . . . . . . . . . . 13

     i.   Executive and Congressional Prerogative in the
          Area of Foreign Relations Precludes Any <u>Bivens</u>
          Remedy . . . . . . . . . . . . . . . . . . . . . 14

     ii.  NAFTA's Dispute Resolution Under Chapter 20 is a
          Distinct Special Factor Precluding a <u>Bivens</u> Remedy   16

II.  <u>This Court Does Not Have Jurisdiction Over Defendants,</u>
     <u>and Venue Does Not Properly Lie in this District</u> . . . . 22

III. <u>There is No <i>Respondeat Superior</i> Liability in Bivens</u>
     <u>Cases</u> . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.  <u>The Complaint Fails to Identify the Violation of A</u>
     <u>Clearly Established Constitutional Right Sufficient</u>
     <u>to Overcome Qualified Immunity</u> . . . . . . . . . . . . 26

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**Cases:**

Alpine View Co. v. Altas Copco,
205 F.3d 208 (5th Cir. 2000) . . . . . . . . . . . . . . . . 23

Assar v. Crescent Counties Foundation For Medical Care,
13 F.3d 215 (7th Cir.), cert. denied,
513 U.S. 816 (1994) . . . . . . . . . . . . . . . . . . . . 17

Bazan v. Hidalgo County,
246 F.3d 481 (5th Cir. 2001) . . . . . . . . . . . . . . . . 27

Beattie v. Boeing Co.,
43 F.3d 559 (10th Cir. 1994), cert. denied,
514 U.S. 1127 (1995) . . . . . . . . . . . . . . . . . . . . 15

Bennett v. Barnett,
210 F.3d 272, 276 (5th Cir.), cert. denied,
531 U.S. 875 (2000) . . . . . . . . . . . . . . . . . . 16, 19

Bhandari v. First Nat. Bank of Commerce,
887 F.2d 609 (5th Cir. 1989)(en banc), cert. denied,
494 U.S. 1061 (1990) . . . . . . . . . . . . . . . . . . . . 21

Bivens v. Six Unknown Federal Narcotics Agents,
403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . 1, 11, 12

Breard v. Greene,
523 U.S. 371 (1998) . . . . . . . . . . . . . . . . . . . . 21

Buford v. Runyon,
160 F.3d 1199 (8th Cir. 1998) . . . . . . . . . . . . . . . 25

Bush v. Lucas,
462 U.S. 367 (1983) . . . . . . . . . . . . . . . . . . 14, 19

Caraballo-Sandoval v. Honsted,
35 F.3d 521 (11th Cir. 1994) . . . . . . . . . . . . . . . . 22

Carlson v. Green,
446 U.S. 14 (1980) . . . . . . . . . . . . . . . . . . . . . 11

Carpenter's Produce v. Arnold,
189 F.3d 686 (8th Cir. 1999) . . . . . . . . . . . . . . . . 17

<u>Chaiffetz v. Robertson Research Holding, Ltd.</u>,
798 F.2d 731 (5th Cir. 1986) . . . . . . . . . . . . . . . . . 21

<u>Chappell v. Wallace</u>,
462 U.S. 296 (1983) . . . . . . . . . . . . . . . . . . . . . 14

<u>Correctional Services Corp. v. Malesko</u>,
122 S. Ct. 515 (2001) . . . . . . . . . . . . . . . . 11, 12, 20

<u>Cronn v. Buffington</u>,
150 F.3d 538 (5th Cir. 1998) . . . . . . . . . . . . . . 24, 25

<u>Davis v. U.S. Dept. of Justice</u>,
204 F.3d 723 (7th Cir. 2000) . . . . . . . . . . . . . . . . . 21

<u>Davis-Warren Auctioneers, J.V. v. FDIC</u>,
215 F.3d 1159 (10th Cir. 2000) . . . . . . . . . . . . . . . . 21

<u>Dewey v. University of New Hampshire</u>,
694 F.2d 1 (1st Cir. 1982), <u>cert</u>. <u>denied</u>,
461 U.S. 444 (1983) . . . . . . . . . . . . . . . . . . . . . 25

<u>Duncan v. Goedeke</u>,
837 F. Supp. 846 (S.D. Tex. 1993) . . . . . . . . . . . . . . 22

<u>Ecclesiastical Order of the Ism of Am, Inc. v. Chasin</u>,
845 F.2d 113 (6th Cir. 1988) . . . . . . . . . . . . . . . . 22

<u>Estados Unidos Mexicanos v. DeCoster</u>,
229 F.3d 332 (1st Cir. 2000) . . . . . . . . . . . . . . . . . 14

<u>FDIC v. Meyer</u>,
510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . 11, 20

<u>Gilbert v. DaGrassa</u>,
756 F.2d 1455 (9th Cir. 1985) . . . . . . . . . . . . . . . . 22

<u>Goldstar v. U.S.</u>,
967 F.2d 965 (4th Cir.), <u>cert</u>. <u>denied</u>,
506 U.S. 955 (1992) . . . . . . . . . . . . . . . . . . . . . 9

<u>Gonzalez v. U.S.</u>,
284 F.3d 281 (1st Cir 2002) . . . . . . . . . . . . . . . . . 8

<u>Gordon v. Kreul</u>,
77 F.3d 152 (7th Cir. 1996) . . . . . . . . . . . . . . . . . 18

Gossmeyer v. McDonald,
128 F.3d 481 (7th Cir. 1997) . . . . . . . . . . . . . . . . 25

Harlow v. Fitzgerald,
457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . 26

Harris v. U.S.,
2002 WL 824277 (N.D. Tex.) . . . . . . . . . . . . . . . . 22

Hicks v. Small,
69 F.3d 967 (9th Cir. 1995) . . . . . . . . . . . . . . . . 16

Idaho v. Couer D'Alene Tribe of Idaho,
521 U.S. 261 (1997) . . . . . . . . . . . . . . . . . . . . 13

James v. Reno,
1999 WL 615084 (D.C. Cir.) . . . . . . . . . . . . . . . . 22

Janicki Logging Co. v. Mateer,
42 F.3d 561 (9th Cir. 1994) . . . . . . . . . . . . . . 17, 20

Johnson v. Eisentrager,
339 U.S. 763 (1950) . . . . . . . . . . . . . . . . . . . . 28

Johnson v. Newburgh Enlarged School Dist,
239 F.3d 246 (2d Cir. 2001) . . . . . . . . . . . . . . . . 24

Kipps v. Caillier,
197 F.3d 765 (5th Cir. 1999), cert. denied,
531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . 27

Kwong Hai Chew v. Colding,
344 U.S. 590 (1953) . . . . . . . . . . . . . . . . . . . . 28

Lee v. Hughes,
145 F.3d 1272 (11th Cir. 1998), cert. denied,
525 U.S. 1138 (1999) . . . . . . . . . . . . . . . . . . . 21

Lewis v. Fresne,
252 F.3d 352 (5th Cir. 2001) . . . . . . . . . . . . . . . 23

Made in the USA Foundation v. U.S.,
242 F.3d 1300 (11th Cir.), cert. denied,
122 S. Ct. 613 (2001) . . . . . . . . . . . . . . . . . . . 15

Matta-Ballesteros v. Henman,
896 F.2d 255 (7th Cir.), cert. denied,
498 U.S. 878 (1990) . . . . . . . . . . . . . . . . . . . . 9

McIntosh v. Turner,
861 F.2d 524 (8th Cir. 1988) . . . . . . . . . . . . . 16, 18

McQueen v. U.S.,
897 F. Supp. 960 (S.D. Tex. 1995) . . . . . . . . . . . . 19

Mitchell v. Forsyth,
472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . 26

More v. Intelcom Support Serv., Inc.,
960 F.2d 466 (5th Cir. 1992) . . . . . . . . . . . . . . . 9

Mowbray v. Cameron County, Texas,
274 F.3d 269 (5th Cir. 2001), cert. denied,
__ U.S. __, 2002 WL 386416 . . . . . . . . . . . . . . . 27

Panda Brandywine Corp. v. Potomac Elec. Power Co.,
253 F.3d 865 (5th Cir. 2001) . . . . . . . . . . . . . . . 23

Pellegrino v. U.S.,
73 F.3d 934 (9th Cir. 1995) . . . . . . . . . . . . . . . 25

Pierce v. Smith,
117 F.3d 866 (5th Cir. 1997) . . . . . . . . . . . . . . . 27

Pringle v. U.S.,
208 F.3d 1220 (10th Cir. 2000) . . . . . . . . . . . . . . 8

Public Citizen v. Dep't of Transportation,
C.A. No. 02-70986 (9th Cir.) . . . . . . . . . . . . . . . 8

Resident Council of Allen Pkwy v. U.S. Dept. of
Housing & Urban Dev.,
980 F.2d 1043 (5th Cir.), cert. denied,
510 U.S. 820 (1993) . . . . . . . . . . . . . . . . . . . 22

Rivera v. Riley,
209 F.3d 24 (1st Cir. 2000) . . . . . . . . . . . . . . . 25

Robinson v. Overseas Military Sales Corp.,
21 F.3d 502 (2d Cir. 1994) . . . . . . . . . . . . . . . . 22

Rouse v. Plantier,
182 F.3d 192 (3d Cir. 1999) . . . . . . . . . . . . 24

Salas v. Carpenter,
980 F.2d 299 (5th Cir. 1992) . . . . . . . . . . . 27

Saucier v. Katz,
121 S. Ct. 2151 (2001) . . . . . . . . . . . . . . 29

Saunders v. Bush,
15 F.3d 64 (5th Cir. 1994) . . . . . . . . . . 25, 28

Schroder v. Bush,
263 F.3d 1169 (10th Cir. 2001), cert. denied,
122 S. Ct. 817 (2002) . . . . . . . . . . . . . . 15

Schweiker v. Chilicky,
487 U.S. 412 (1988) . . . . . . . . . . . . . . . passim

Seigert v. Gilley,
500 U.S. 226 (1991) . . . . . . . . . . . . . . . 26

Simpkins v. D.C.,
108 F.3d 366 (D.C. Cir. 1997) . . . . . . . . . . 25

Stafford v. Briggs,
444 U.S. 527 (1980) . . . . . . . . . . . . . . . 24

Sugrue v. Derwinski,
26 F.3d 8 (2d Cir. 1994), cert. denied,
515 U.S. 1102 (1995) . . . . . . . . . . . . . . 17

Tallman v. Reagan,
846 F.2d 494 (8th Cir. 1985) . . . . . . . . . . 25

Tinsely v Commissioner, I.R.S.,
1998 WL 59481 (N.D. Tex.) . . . . . . . . . . . 22

Trulock v. Freeh,
275 F.3d 391 (4th Cir. 2001) . . . . . . . . 24, 25

U.S. v. Jimenez-Nava,
243 F.3d 192 (5th Cir.), cert. denied,
533 U.S. 962 (2001) . . . . . . . . . . . . . . 9, 10

U.S. v. Li,
206 F.3d 56 (1st Cir.), cert. denied,
531 U.S. 956 (2000) . . . . . . . . . . . . . . . . . . 9

U.S. v. Morton,
467 U.S. 822 (1984) . . . . . . . . . . . . . . . . . 22

U.S. v. Stanley,
483 U.S. 669 (1987) . . . . . . . . . . . . . . . 14, 19

U.S. v. Verdugo,
494 U.S. 259 (1990) . . . . . . . . . . . . . . . 28, 29

Wilson v. Layne,
526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . 29

Wilson-Cook Medical, Inc. v. Wilson,
942 F.2d 247 (4th Cir. 1991) . . . . . . . . . . . . . 8

Zadvydas v. Davis,
533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . 28

Zephyr Aviation v. Dailey,
247 F.3d 565 (5th Cir. 2001) . . . . . . . . . . . . 17

Zuspann v. Brown,
60 F.3d 1156 (5th Cir. 1995), cert. denied,
516 U.S. 1111 (1996) . . . . . . . . . . . . 12, 16, 17

**Statutes, Regulations and Treaties:**

U.S. Const. Amend. XIV, Sect. 1 . . . . . . . . . . . . . 28

19 U.S.C. § 3312 . . . . . . . . . . . . . . . 4, 10, 12

19 U.S.C. § 3315 . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1391(b) . . . . . . . . . . . . . . . . . 24

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . 14, 21

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . 21

49 C.F.R. § 1182.2(a)(10) . . . . . . . . . . . . . . . 8

49 U.S.C. § 13902 . . . . . . . . . . . . . . . . . . . . . 5

Motor Carrier Improvement Act of 1999, P.L. No 106-159,
106th Cong. 1st Sess., 113 Stat. 1747 (Dec. 9, 1999) . . . . 26

NAFTA Implementation Act, Pub. L. No. 103-182,
107 Stat. 2057 (1993), codified at 19 U.S.C. §§ 3301-3474 . . . 2

P.L. 107-87, 107th Cong., 115 Stat. 864 (Dec. 18, 2001) . . . . 5

NAFTA Implementation Act, 1993 WL 561199 . . . . . . . . *passim*

NAFTA Implementation Act, 1992 WL 812402 . . . . . . . . . 3, 4

**Other Authorities:**

66 Fed. Reg. 30,799 (June 7, 2001) . . . . . . . . . . . . . 7

William D. Merritt, A Practical Guide to Dispute
Resolution under NAFTA,
5 NAFTA: L. & Bus. Rev. Am. 169, 170 (1999) . . . . . . . . 2-4

## INTRODUCTION

Plaintiffs in this suit are Mexican citizens and residents of Mexico who claim to be among a class of individuals entitled to benefits under the North American Free Trade Agreement (NAFTA) related to operating commercial vehicles or investing in certain commercial concerns in the United States. Although ostensibly a Bivens-type action against high-ranking Department of Transportation officials,[2] this suit is really a dispute over the United States' implementation and compliance with NAFTA. This action has its genesis more than six years before any named defendant assumed his or her current federal office; nonetheless, plaintiffs sue the current Secretary of Transportation, Norman Mineta, as well as Mary Peters and Joseph Clapp (respectively the present Administrator of the Federal Highway Administration and the Federal Motor Carrier Safety Administration), in their individual capacities, praying for unspecified damages against them personally. Plaintiffs' claims are meritless and should be dismissed in their entirety.

## BACKGROUND

In 1990, the United States, Mexico and Canada formally began talks to create a "free trade zone" in North America through the phased elimination or reduction of both tariff and non-tariff

---

[2] Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)(recognizing implied right of action for damages against federal officials in their individual capacities to remedy certain Fourth Amendment violations).

trade barriers.   Extensive negotiations culminated in the North American Free Trade Agreement ("NAFTA" or the "Agreement"), signed in 1992 by the leaders of the three countries.   With respect to NAFTA's substance, in Annex I, the parties addressed the application and permit process for certain cross-border trucking operations, as well as investments by foreign nationals in certain U.S. domiciled carriers, that are generally the subject of this suit.   Upon passage of the NAFTA Implementation Act in December, 1993, the United States Congress approved the Agreement, providing a series of domestic laws to effectuate and enforce it.   Pub. L. No. 103-182, 107 Stat. 2057 (1993), codified at 19 U.S.C. §§ 3301-3474.

An entire chapter of the Agreement is devoted to "Institutional Arrangements and Dispute Settlement Procedures." Chapter 20 sets out "the institutions responsible for overseeing the implementation of NAFTA and. . .assist[ing] in the avoidance and resolution of disputes between NAFTA countries. . ."[3]  The North American Free Trade Agreement Implementation Act, 1993 WL 561199, *1.  Among them, NAFTA created the Free Trade Commission, comprised of "ministers or cabinet level officials designated by

---

[3]  Chapter 19 also provides for dispute resolution; that chapter, however, "deals with more specific and narrow issues of distinct laws," such as certain trade practices known as "dumping," not applicable to plaintiffs' underlying complaint in this civil action.  See generally William D. Merritt, A Practical Guide to Dispute Resolution under NAFTA, 5 NAFTA:  L. & Bus. Rev. Am. 169, 170 (1999)("NAFTA Dis. Res.").

each country." _Id._  The FTC was in turn was empowered to establish rules of procedure applicable to NAFTA disputes, providing hearings and the opportunity to present evidence and rebuttal.  _Id._ art. 2012(1)(a).  _Id._  Chapter 20 also provided "a Secretariat to provide administrative support to the Commission and dispute settlement panels," and each NAFTA signatory now has a permanent national Secretariat.  _Id._; 19 U.S.C. § 3315.

Not only did the parties to NAFTA establish the institutions responsible for resolving disputes, they agreed to applicable procedures as well.  NAFTA disputes are mediated in a three-part process consisting of: (1) consultations between the parties; (2) a meeting of the FTC if consultations fail; and if necessary; (3) formation of an arbitral panel.  NAFTA Dis. Res. at 181; NAFTA Implementation Act, 1993 WL 561199, *2.  Specified timeframes apply to each phase.  _Id._

NAFTA addressed procedures before the arbitral panel in significant detail.  Panel members, drawn from an approved roster, must "be independent of, and not affiliated with or take instructions from, any Party. . ."  NAFTA, art. 2009(2)(b), 1992 WL 812402, *5.  The panel's fact-finding powers are broad, and expert and scientific review boards may be established to "report on any factual issue concerning environmental, health, safety or other scientific matters. . ."  _Id._ art. 2015(1).  If a panel is convened, it must present an initial report with findings of

-3-

fact, a determination on whether the challenged conduct was inconsistent with NAFTA, and recommendations as appropriate.  Id. art. 2016.  The participating countries, in turn, may respond to that report, requesting reconsideration or further review.  Id. Ultimately, a final report is issued.[4]

In approving NAFTA, Congress expressly addressed the Agreement's effect on domestic law in the United States.  "With respect to private remedies," the law states in no uncertain terms:  "No person other than the United States shall have any cause of action or defense under the Agreement or by virtue of Congressional approval thereof."  19 U.S.C. § 3312(c)(1)(A) (emphasis added).  In addition,

> No person other than the United States may challenge, in an
> action brought under any provision of law, any action or
> inaction by any department, agency or other instrumentality
> of the United States . . . on the ground that such action or
> inaction is inconsistent with the Agreement [NAFTA]. . .

19 U.S.C. § 3312(c)(2).  Congress recognized that suits of this nature "may interfere with the Administration's conduct of trade and foreign relations and with suitable resolution of disputes under the[] Agreement[]."  NAFTA Implementation Act, 1993 WL 561124, *9.  With certain narrow exceptions inapplicable here

_____

[4] Although the panel determination is not binding on any party as a matter of domestic law, a party found in violation of NAFTA who does not agree to settle consistent with the panel findings, may have their "equivalent NAFTA benefits" suspended by the complaining country until resolution is reached.  NAFTA Dis. Res. at 184, citing NAFTA, art. 2019.

(e.g. the right to challenge certain provisions of the implementing bill under the Tariff Act), Congress broadly described the section 3312 bar as a "prohibition of a private right of action based on NAFTA." <u>Id.</u>  In short, "a private party" cannot sue "[t]he United States, a state <u>or</u> a private party <u>on the grounds of consistency (or inconsistency) with the NAFTA</u>." <u>Id.</u> (emphasis added).

## PLAINTIFFS' ALLEGATIONS

For the limited purpose of this motion, defendants assume the truth of the following facts alleged by plaintiffs:

Plaintiffs are Mexican citizens and residents of Mexico. They operate or have interests in Mexican businesses that transport goods.  The United States has a moratorium on the issuance of new operating permits to certain foreign motor carriers, a moratorium first instituted by Congress in 1982 and subsequently extended by legislative action and Presidential Memorandum.  Plaintiffs acknowledge that with certain exceptions, this moratorium remains in effect today.[5] Com. ¶¶ 22-26.

---

[5] On December 18, 2001, the day the instant complaint was filed, Congress explicitly addressed the Federal Motor Carrier Safety Administration's authority to issue operating permits to Mexican motor carriers.  P.L. No. 107-87, 107th Cong., 115 Stat. 864 (Dec. 18, 2001).  The law states that the FMCSA may not "obligate[] or expend[] funds for review or processing of an application by a Mexican motor carrier for authority to operate" in areas on the U.S.-Mexican border until an <u>elaborate</u> series of condition are met, including the promulgation of regulations and policies relating to various safety reviews of Mexican motor carriers.  49 U.S.C. § 13902, note.  In addition, no such

-5-

Pursuant to NAFTA, plaintiffs allege, they submitted or sought to submit applications that despite the moratorium on other foreign carriers, would have allowed Mexican carriers such as themselves "to operate their trucks within the four border states [California, Arizona, New Mexico and Texas] since December 18, 1995, and . . . within the entire United States since January 1, 2000. . ." Com. at 2. They claim further they submitted or sought to submit applications "to invest in, own or control United States-domiciled trucking firms . . ." Id.

On December 18, 1995, the then-Secretary of the Department of Transportation issued a press release announcing that Mexico and the United States were working to improve Mexican truck safety. As the process was not complete, the United States would accept and process applications from Mexican firms, but would not finalize them. Id. ¶ 29-30. Although that press release announced that Mexican nationals would be allowed to invest in certain U.S. carriers, plaintiffs aver that a complete ban on such activity still exists.[6] Id.

_____

applications may be approved until the DOT's Inspector General completes a comprehensive review of border operations and the Secretary of Transportation certifies that "opening the border does not pose a safety risk to the American public." Id.

[6] In fact, with respect to investment restrictions, the complaint fails to accurately characterize the current state of the law. On June 5, 2001, by Presidential Memorandum, the moratorium was modified, "liberalizing certain restrictions on investment in truck and bus services" by motor carriers domiciled in the U.S. but owned or controlled by persons of Mexico. 66

Plaintiffs admit that in September, 1998, Mexico formally requested the formation of an arbitral panel "to hear the dispute of whether by failing to phase out U.S. restrictions on cross-border trucking and on Mexican investment in the U.S. trucking industry, the U.S. was in violation of the national treatment and most-favored-nation provisions" of NAFTA.  Id. ¶ 31.  On February 1, 2001, the panel issued a final report, finding that the Transportation Department had received 184 applications from Mexican nationals to provide cross-border service into border states, none of which were approved.  Id. ¶ 32.  The report indicated that "U.S. laws and regulations" denied operating authority in the United States to existing carriers if the applicant is a Mexican national, or the carrier is controlled by Mexican nationals, as well as such authority to newly created U.S. domiciled carriers with Mexican investment.  Id. ¶ 33.

Without pointing to specific acts of any defendant in this case, plaintiffs claim that each violated their constitutional rights to equal protection and due process.  They broadly allege "Defendants, for unlawful and discriminatory reasons, employed policies, practices, patterns and procedures against them and other Mexican nationals similarly situated based on their national origin between December 18, 1995, and the present date."

---

Fed. Reg. 30,799 (June 7, 2001).  However, even if President Bush had not lifted the investment moratorium, plaintiffs would still not have a cause of action against defendants herein.

Com. at 3.   These policies were manifest, plaintiffs claim, by the failure to process permit applications and the issuance of Federal Regulations requiring Mexican applicants to identify their national origin.[7]   Id.   The complaint makes no attempt to reconcile a significant threshold problem:   plaintiffs do not allege defendants were in office when the challenged policy decisions were made, and in fact they were not.   Similarly, plaintiffs fail to allege facts supporting personal jurisdiction over the non-resident defendants in any Texas court.   See Com ¶¶ 13-15; Exs. A-C, Declarations of Mineta, Clapp and Peters.[8]

---

[7]   The only regulation cited is 49 C.F.R. § 1182.2(a)(10), issued long before any defendant in this case took office.   Since this lawsuit was filed, new regulations regarding the application process for Mexican-domiciled carriers were issued by the Federal Motor Carrier Safety Administration and became effective May 3, 2002.   67 Fed. Reg. 12652 (Mar. 19, 2002), 2002 WL 415416. Environmental challenges to the regulations have been filed, and are being vigorously defended by the United States.   Public Citizen v. Dep't of Transportation, C.A. No. 02-70986 (9th Cir.).

[8]   These declarations go to plaintiff's failure to establish jurisdiction and do not convert this motion to dismiss into a motion for summary judgment.   Gonzalez v. U.S., 284 F.3d 281, 288 (1st Cir 2002)("attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion"); Pringle v. U.S., 208 F.3d 1220, 1222 (10th Cir. 2000)("court has wide discretion to allow affidavits. . .to resolve disputed jurisdictional facts"); Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir. 1991)("affidavits submitted by defendants concerning improper venue [and] lack of personal jurisdiction. . .did not convert the motion to dismiss").

-8-

## DISCUSSION

I.  **There is No Private Right of Action for Damages Against Federal Officials to Remedy the Allegedly Unconstitutional Treatment of Plaintiffs In the Implementation of NAFTA.**

A.  Plaintiffs Cannot Rely on NAFTA to Support Any Claim.

At its core, plaintiffs' complaint seeks damages for the United States' alleged failure to implement certain NAFTA obligations of which they claim to be beneficiaries.  "Treaties," however, "are contracts between or among independent nations." U.S. v. Jimenez-Nava, 243 F.3d 192, 194 (5th Cir.), cert. denied, 533 U.S. 962 (2001)(rejecting detainee's claim of "judicially enforceable rights" under Vienna Convention).  "As such, they do not generally create rights that are enforceable in the courts." Id., citing U.S. v. Li, 206 F.3d 56, 60 (1st Cir.), cert. denied, 531 U.S. 956 (2000); Goldstar v. U.S., 967 F.2d 965, 968 (4th Cir.), cert. denied, 506 U.S. 955 (1992)("treaties are not presumed to create rights that are privately enforceable"); Matta-Ballesteros v. Henman, 896 F.2d 255, 259 (7th Cir.), cert. denied, 498 U.S. 878 (1990)("well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns").[9]  "Even

---

[9] This issue often arises in criminal cases, where liberty interests are implicated; the rationale applies with even greater force to attempts to redress claimed economic injury through private damage suits.  See, e.g., More v. Intelcom Support Serv., Inc., 960 F.2d 466, 470 (5th Cir. 1992)(rejecting damage action by Filipino citizens to enforce treaty where "Treaty clearly envisions processes other than resort to the judiciary").

-9-

where a treaty provides certain benefits for nationals of a particular state--such as fishing rights--it is traditionally held that any rights arising out of such provisions are, under international law, those of the state and . . . individual rights are only derivative through the states." Jimenez-Nava, 243 F.3d at 195 n.3 (quotations omitted).

Given the rules of construction applicable to international treaties and accords, it is crystal clear that the NAFTA Agreement itself does not support an individually enforceable right of action for damages. Here, of course, the problems associated with plaintiffs' particular theory of recovery are even more insurmountable because Congress has explicitly precluded such causes of action. 19 U.S.C. § 3312. Simply put, plaintiffs have no cognizable claim separate and apart from NAFTA, and this court need go no further to resolve this case.

B.   Plaintiffs Have No Implied Right of Action under the Constitution.

The complaint's constitutional gloss furnishes no additional enforceable rights. Plaintiffs maintain that the United States' alleged failure to implement NAFTA violated their equal protection and due process rights, and claim to have a cause of action for damages directly under the Constitution to remedy that violation. This court should firmly decline plaintiffs' invitation both to create a cause of action Congress has explicitly precluded, and to depart so radically from the clear

-10-

limits the Supreme Court has placed on implied damage actions under the Constitution.

In 1971, the Supreme Court recognized an implied private right of action directly under the Constitution to remedy a Fourth Amendment violation, permitting plaintiffs to maintain a damage suit directly against federal officers in their individual capacities. <u>Bivens v. Six Unknown Federal Narc. Agents</u>, 403 U.S. 388 (1971). The Court's "authority to imply a new constitutional tort, not expressly authorized by statute, is anchored in [its] general jurisdiction to decide all cases 'arising under the Constitution, laws, or treaties of the United States.'" <u>Correctional Services Corp. v. Malesko</u>, 122 S. Ct. 515, 519 (2001)(refusing to imply constitutional right of action against federal contractor of halfway house), <u>citing</u>, 28 U.S.C. § 1331. Since 1971, while the Court has recognized <u>Bivens</u> actions in some areas, it has refused to do so in others.[10] In its "most recent decisions," the Court has "responded cautiously to suggestions that <u>Bivens</u> remedies be extended into new contexts." <u>FDIC v. Meyer</u>, 510 U.S. 471, 484 (1994). In fact, the Court explained,

> In 30 years of <u>Bivens</u> jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action

---

[10]  <u>Compare</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980)(8th Amendment prohibition can support <u>Bivens</u> claim) <u>with</u> <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 420, 428 (1988) (no <u>Bivens</u> action to remedy unconstitutional denial of Social Security benefits).

for a plaintiff who lacked any alternative remedy for harms
caused by an individual officer's unconstitutional conduct.

Malesko, 122 S. Ct. at 521.  "Where such circumstances are not

present," the Supreme Court has "consistently rejected

invitations to extend Bivens. . ."  Id. (emphasis added).

There are two accepted circumstances that foreclose a Bivens

action:  First, where Congress explicitly precludes a court-

created right of action; and, second, in the absence of explicit

congressional action, where "special factors" counsel against

providing a damages remedy directly against individual officers.

See generally Bivens, 403 U.S. at 396-97; Zuspann v. Brown, 60

F.3d 1156, 1160 (5th Cir. 1995), cert. denied, 516 U.S. 1111

(1996) (no Bivens action where "special factors," "statutory

prohibition against the relief sought," or "exclusive statutory

remedy").  Both circumstances exist here.

### 1. Congress Has Explicitly Precluded a Cause of Action.

With respect to challenges to the implementation of NAFTA,

again, Congress has spoken in the clearest of terms:  "No person

other than the United States shall have any cause of action or

defense under the Agreement or by virtue of Congressional

approval thereof."  19 U.S.C. § 3312(c)(1)(A) (emphasis added).

"[A] private party" cannot sue "[t]he United States, a state or a

private party on the grounds of consistency (or inconsistency)

with the NAFTA."  NAFTA Implementation Act, 1993 WL 561124, *9.

(emphasis added).  Whatever the underlying vehicle that drives

-12-

plaintiffs' challenge, Congress has quite simply closed the door
to a damages remedy in a United States court.

### 2. Special Factors Preclude Judicial Recognition of a Cause of Action.

In light of Congress' clear statutory mandate, there is no
colorable basis for this suit.  Even in the absence of section
3312, however, "special factors counseling hesitation" would
still preclude plaintiffs' complaint.  Chilicky, 487 U.S. at 428.
As the Supreme Court has explained, Bivens and its progeny
"reflect a sensitivity to varying contexts, and courts should
consider whether there are 'special factors counseling
hesitation,' before allowing a suit to proceed under [that]
theory."  Idaho v. Couer D'Alene Tribe of Idaho, 521 U.S. 261,
280 (1997).  The Court has emphasized the "importance of case-by-
case analysis," adding, "[t]he range of concerns to be considered
in answering this inquiry is broad."  Id.

At its core, the Supreme Court's refusal to imply rights of
action where "special factors" exist is a recognition that in
certain circumstances, given policy considerations that inhere in
the powers accorded coordinate branches of government, federal
courts should decline the invitation to create federal common
law.  Constitutional tort actions in which the Court has applied
this principle include damage suits arising out of federal
employment, the military, and the implementation of various

-13-

federal benefit programs.[11]  In this case, two distinct "special factors" counsel against creating a judicial remedy for the allegedly unconstitutional implementation of NAFTA:  first, recognition of a <u>Bivens</u> remedy will interfere with Executive and Legislative prerogatives in the sensitive area of treaties and foreign affairs; and second, it would impinge on Article 20's controlling dispute resolution mechanisms agreed upon by NAFTA's signatories, including Mexico as plaintiffs' sovereign representative, and approved by the United States Congress.

     i.    Executive and Congressional Prerogative in the Area of Foreign Relations Precludes Any <u>Bivens</u> Remedy.

There is no area in which the courts have adopted a broader "hands-off" policy than the relations between sovereign nations: "The conduct of the foreign affairs of this country is committed to the Executive and to the Congress."  <u>Estados Unidos Mexicanos v. DeCoster</u>, 229 F.3d 332, 340-41 (1st Cir. 2000)(refusing to recognize Mexico's standing to bring § 1981 suit against private parties where dispute was "governed" by NAFTA).  Not only do

---

    [11]  <u>See</u>, <u>e.g.</u>, <u>Schweiker</u>, 487 U.S. at 420, 428 (no <u>Bivens</u> remedy for unconstitutional denial of Social Security benefits in light of comprehensive congressional scheme); <u>Bush v. Lucas</u>, 462 U.S. 367 (1983)(refusing unanimously to create <u>Bivens</u> remedy for 1st Amendment violation arising out of federal employment); <u>Chappell v. Wallace</u>, 462 U.S. 296, 303-04 (1983)(unanimously refusing to imply <u>Bivens</u> action given "special status of the military" and "nature of military life"); <u>U.S. v. Stanley</u>, 483 U.S. 669, 683 (1987)(no <u>Bivens</u> action for civilian military personnel because "congressionally uninvited intrusion into military affairs by the judiciary is inappropriate").

federal courts generally defer to the Executive and Legislative Branches in the area of foreign relations, they have repeatedly done so in the context of NAFTA, reasoning that such challenges present non-justiciable political questions in which federal courts will not interfere.  Id.; see also Made in the USA Foundation v. U.S., 242 F.3d 1300, 1311-20 (11th Cir.), cert. denied, 122 S. Ct. 613 (2001)(refusing to address American union's claim that NAFTA violated the Treaty Clause because whether it was a "treaty" within the meaning of the Constitution was "non-justiciable political question"); Schroder v. Bush, 263 F.3d 1169 (10th Cir. 2001), cert. denied, 122 S. Ct. 817 (2002) (farmers and ranchers not entitled to declaratory or injunctive relief against United States for implementing NAFTA).

In seeking damages for the United States' alleged failure to conform to its NAFTA obligations, plaintiffs ask this court to "invade inappropriately the provinces of both the Legislative and Executive Branches." Schroeder, 263 F.3d at 1176.  Under the Supreme Court's rationale in Bivens, any area that falls within the unique "province of the Executive Branch," may constitute a special factor precluding a remedy.  See, e.g., Beattie v. Boeing Co., 43 F.3d 559, 563 (10th Cir. 1994), cert. denied, 514 U.S. 1127 (1995)("predominant issue of national security clearances amounts to such a special factor counseling against recognition of a Bivens claim in this case").  Congress has already

recognized that NAFTA-inspired rights of action threaten to
"interfere with the Administration's conduct of trade and foreign
relations and with suitable resolution of disputes under the[]
Agreement[]." NAFTA Implementation Act, 1993 WL 561124, *9.
This court should do no less.

> ii.  NAFTA's Dispute Resolution Under Chapter 20 is a
>      Distinct Special Factor Precluding a <u>Bivens</u> Remedy.

Where a particular federal program provides an "elaborate
remedial scheme" to effectuate it, the Supreme Court has refused
to alter the program's design by implying a right of action for
damages directly against federal officials in their individual
capacity. <u>Chilicky</u>, 487 U.S. at 414, 429. As the Fifth Circuit
has observed, when Congress has "acted to create a comprehensive
statutory scheme to address a particular class of claims, the
courts will not act to create additional judicial remedies, even
where a particular litigant does not have a remedy available
under the statutory scheme." <u>Bennett v. Barnett</u>, 210 F.3d 272,
276 (5th Cir.), <u>cert. denied</u>, 531 U.S. 875 (2000)(Postal Reorg.
Act "(via the plaintiffs' collective bargaining agreement)
pre-empts <u>Bivens</u> claims"); <u>Zuspann</u>, 60 F.3d at 1161 (where
Congress "explicitly precluded judicial review. . .failure to
create a remedy against individual [federal] employees was not an
oversight"); <u>accord</u> <u>McIntosh v. Turner</u>, 861 F.2d 524 (8th Cir.
1988)(If Congress "created other remedies to vindicate (though
less completely) the particular rights being asserted in a given

-16-

case, the chances are that the courts will leave the parties to the remedies Congress has expressly created for them").

The Fifth Circuit and other courts of appeal routinely refuse to imply <u>Bivens</u> actions to remedy constitutional violations in the implementation and administration of all variety of federal programs.[12]  All of these cases arose in far less sensitive contexts than the instant dispute, with its implications for foreign relations.  In this case, then, the question is whether this court should supplement NAFTA and the dispute resolution procedures of Chapter 20 by grafting on an additional individual damage remedy that the signatories to NAFTA declined to adopt and Congress explicitly precluded.  The answer simply is no.

Chapter 20's scheme to resolve NAFTA disputes is indeed

---

[12]    <u>See</u>, <u>e.g.</u>, <u>Zuspann</u>, 60 F.3d at 1161 (no <u>Bivens</u> remedy against VA employees for unconstitutionally withheld benefits); <u>Carpenter's Produce v. Arnold</u>, 189 F.3d 686, 688 (8th Cir. 1999) (special factors precluded <u>Bivens</u> suit against USDA employees for unconstitutional denial of farm aid); <u>Hicks v. Small</u>, 69 F.3d 967 (9th Cir. 1995)(Veteran's Judicial Review Act precluded <u>Bivens</u> claim); <u>Sugrue v. Derwinski</u>, 26 F.3d 8, 12-13 (2d Cir. 1994), <u>cert.</u> <u>denied</u>, 515 U.S. 1102 (1995)(special factors precluded <u>Bivens</u> action for denial of VA benefits); <u>Assar v. Crescent Counties Foundation For Medical Care</u>, 13 F.3d 215 (7th Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 816 (1994)(special factors precluded physician's <u>Bivens</u> action against organization that established criteria for services to Medicare beneficiaries); <u>Janicki Logging Co. v. Mateer</u>, 42 F.3d 561 (9th Cir. 1994) (Contract Disputes Act's comprehensive remedial scheme precluded <u>Bivens</u> action against Forest Service officers); <u>cf</u> <u>Zephyr Aviation v. Dailey</u>, 247 F.3d 565, 570 n. 5 (5th Cir. 2001)(noting <u>Chilicky</u> might bar constitutional claim against FAA officials, though not deciding "whether it displaces <u>Bivens</u> claims all together").

-17-

elaborate, creating whole institutions that did not previously
exist.  Dispute resolution is subject to a three level process of
consideration and review.  That review starts with consultations.
It proceeds to the FTC.  Disputes then move to an independent
panel that considers evidence from all parties and has extensive
fact-finding authority at its disposal.  The parties are informed
in writing of the panel's initial findings, and given the
opportunity to offer additional information before a final report
is issued.  Mexico in fact has exercised these procedures in the
context of the particular dispute at issue in this case.  That is
precisely the type of "unusually protective multi-step process
for review and adjudication of disputed claims," the Supreme
Court has found compelling.  <u>Chilicky</u>, 487 U.S. at 424.

A party who believes he has suffered constitutional injury
in the implementation of a federal program cannot "fall back" on
"what is effectively a system of federal constitutional common
law in an effort to bypass the express remedies or deliberately
sidestep limitations deliberately crafted."  <u>Gordon v. Kreul</u>, 77
F.3d 152, 155 (7th Cir. 1996).  When "Congress has heavily
regulated a certain subject, . . . but has said nothing about a
right of action for constitutional violations," the "result is a
sort of presumption against judicial recognition of direct
actions for violations of the Constitution by federal officials
or employees."  <u>McIntosh</u>, 861 F.2d at 526, <u>cited with approval in</u>

-18-

McQueen v. U.S., 897 F. Supp. 960, 962 (S.D. Tex. 1995).

Defendants recognize that Chapter 20 offers plaintiffs no individual remedy for NAFTA violations.  However, even the "absence of statutory relief for a constitutional violation, . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."  Chilicky, 487 U.S. at 421 (emphasis added); accord Bennett, 210 F.3d at 276.  The Chilicky Court reached its decision despite the fact that existing remedies did not "provide complete relief for the plaintiff," and acknowledged, "suffering months of delay in receiving the income on which one has depended for the very necessities of life cannot be fully remedied . . ." Id. at 423, 428, citing Bush, 462 U.S. at 388; see also Stanley, 483 U.S. at 683 ("[I]t is irrelevant to a special factors analysis whether the laws currently on the books afford Stanley. . .an adequate federal remedy for his injuries").

Plaintiffs' real complaint in this case is against the United States:  no individual federal official or even single agency was responsible for any of the alleged failures to implement the motor carrier access or investment provisions of NAFTA.  In any event, as discussed above, the United States and its agencies continue to take an active role in both of these areas, lifting the moratorium on Mexican investment in U.S. motor carriers in June, 2001, and recently issuing new regulations

-19-

setting forth the application process for Mexican motor carriers seeking U.S. operating authority.  To the extent that plaintiffs remain unhappy with those efforts, what they essentially want is to control the actions and policy decisions of the federal government.  The "purpose of _Bivens_," however, "is to deter the officer, not the agency." _Malesko_, 122 S. Ct. at 520, _citing_ _Meyer_, 510 U.S. at 485.  As the Supreme Court has observed,

> If deterring the conduct of a policy-making entity was the purpose of _Bivens_, then _Meyer_ would have implied a damages remedy against the FDIC; it was after all an agency policy that led to Meyer's constitutional deprivation.  But _Bivens_ from its inception has been based not on that premise, but on the deterrence of individual officers who commit unconstitutional acts.

_Id._ at 522 (citations omitted); _Janicki Logging Co._, 42 F.3d at 565 ("On any objective view, what [plaintiff] sought was a remedy for breach of its contract with the USFS.  Yet it decided to pursue damage claims against individuals who are not principals to the contract.  They are merely employees of a principal--USFS. That is a rather jarring proposition all by itself").

With respect to the question of whether to imply a right of action under the Constitution, this case does not present a close call:  Congress has explicitly barred one, courts under any circumstances would not imply one that interferes with the United States' conduct of foreign affairs, and to do so here supplants dispute resolution procedures agreed upon by NAFTA's signatories and approved by Congress.  Any _one_ of these considerations is

-20-

compelling; taken in totality they are overwhelming.  Yet
plaintiffs ask this court to do what no court has ever done,
recognize a damage action against Executive Branch officials for
the United States' allegedly unconstitutional implementation of
NAFTA.  Defendants urge this court to see this case for what it
is, not a <u>Bivens</u> suit against individual defendants, but an end-
run around the sovereignty of the United States who is in the
process of implementing NAFTA and plainly cannot be charged with
any claim of "damages" associated with those efforts.[13]

---

[13]  In addition to <u>Bivens</u>, plaintiffs identify 42 U.S.C. §
1981 as a distinct cause of action.  Com. at 12-14.  For any
number of reasons, that claim is meritless.  By its plain terms,
1981 extends only to certain claims of discrimination by "persons
within the jurisdiction of the United States"; it does not apply
extra-territorially.  <u>See generally</u> <u>Breard v. Greene</u>, 523 U.S.
371, 378 (1998)(Paraguay is not "within the jurisdiction of the
United States" for purposes of § 1983).  Moreover, the alleged
basis of discrimination here is "Mexican national origin."  Com.
¶ 40.  However, the Fifth Circuit has held that 1981 is limited
to racial discrimination and does not apply to "national origin"
or "alienage."  <u>Chaiffetz v. Robertson Research Holding, Ltd.</u>,
798 F.2d 731, 735 (5th Cir. 1986); <u>Bhandari v. First Nat. Bank of
Commerce</u>, 887 F.2d 609, 610 (5th Cir. 1989)(<u>en banc</u>), <u>cert.
denied</u>, 494 U.S. 1061 (1990)(§ 1981 protections "do not extend to
prohibit alienage discrimination").  Most fundamentally, the
language of 1981, like its sister statute 42 U.S.C. § 1983, "is
clear":  it "provides a cause of action for individuals subjected
to discrimination by private actors and discrimination under
color of state law, but does not provide a cause of action for
discrimination under color of federal law."  <u>Lee v. Hughes</u>, 145
F.3d 1272, 1277 and n. 5 (11th Cir. 1998), <u>cert. denied</u>, 525 U.S.
1138 (1999)("[w]e are unaware of any court that has held
otherwise"); <u>Davis-Warren Auctioneers, J.V. v. FDIC</u>, 215 F.3d
1159, 1161 (10th Cir. 2000)("Since Congress amended the statute,
the weight of judicial authority has held that § 1981 does not
protect against alleged discrimination under color of federal
law"); <u>Davis v. U.S. Dept. of Justice</u>, 204 F.3d 723, 726 (7th
Cir. 2000)(same; dismissing 1981 suit against HUD employees); <u>see</u>

-21-

## II.  **This Court Does Not Have Jurisdiction Over Defendants, and Venue Does Not Properly Lie in this District.**

"[I]n order to bring a damage action against a federal official in his individual capacity, and thereby avoid the bar of sovereign immunity, the normal rules for establishing in personam jurisdiction apply." Gilbert v. DaGrassa, 756 F.2d 1455, 1459 (9th Cir. 1985); Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir. 1988)(same).[14]  Personal jurisdiction protects individual interests "implicated when a nonresident defendant is haled into a distant and possibly inconvenient forum." U.S. v. Morton, 467 U.S. 822, 828 (1984). "Exercising personal jurisdiction over a nonresident defendant is consistent with due process when (1) that defendant has

_____

also Resident Council of Allen Pkwy v. U.S. Dept. of Housing & Urban Dev., 980 F.2d 1043, 1053 (5th Cir.), cert. denied, 510 U.S. 820 (1993)("federal officials, acting under color of federal law rather than state law, are not subject to suit under § 1983"); Duncan v. Goedeke, 837 F. Supp. 846 (S.D. Tex. 1993) (same; dismissing 1983 action against Customs employees).

[14]  Accord Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994)(court lacked personal jurisdiction over Bivens defendants); Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994)(Bivens defendants had no contact with Georgia sufficient to support personal jurisdiction); James v. Reno, 1999 WL 615084, *1 (D.C. Cir.)(no personal jurisdiction over BOP employees under D.C. long-arm statute where "acts and omissions were made in Texas, both federal prisons at issue are located in Texas, and no injury is alleged to have been suffered in D.C."); Harris v. U.S., 2002 WL 824277, *4 (N.D. Tex.) (dismissing Bivens defendants for no personal jurisdiction); Tinsely v Commissioner, I.R.S., 1998 WL 59481, *3 (N.D. Tex.)(no jurisdiction over Bivens defendant under Texas long arm statute where any acts or omissions occurred in Washington, D.C., and no defendant purposefully established minimum contacts in Texas).

-22-

purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 867 (5th Cir. 2001)(citations omitted) (Texas long arm statute "authorizes personal jurisdiction to the full extent allowed by the Due Process"). It is plaintiffs' burden "to establish the district court's jurisdiction over non-residents." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).

Other than pointing to the offices defendants head -- all located in Washington, D.C., Com. ¶¶ 13-15 -- plaintiffs identify no acts by defendants Mineta, Clapp or Peters in Texas. Even the claim that a defendant knew plaintiffs were "Texas residents and knew its actions would intentionally cause harm to [plaintiffs] in Texas," the Fifth Circuit has found, is insufficient to establish minimum contacts. Panda, 253 F.3d at 869; see also Alpine View Co. v. Altas Copco, 205 F.3d 208, 217 (5th Cir. 2000) (no personal jurisdiction over non-residents where plaintiffs did not "assert that the alleged misdeeds occurred in Texas, or that the [operative] Agreement was negotiated or executed in Texas. . ."). Non-resident plaintiffs in this case cannot even make that showing. The complaint does not allege facts establishing minimum contact between defendants and Texas, and defendants deny

-23-

having any.  Exs. A-C.  Under the circumstances, the exercise of personal jurisdiction does not comport with due process.[15]

## III.   **There is No _Respondeat Superior_ Liability in Bivens Cases.**

Because potential <u>Bivens</u> liability flows to each officer individually, it is hornbook law that personal participation in the allegedly unconstitutional act is a necessary predicate to any tort claim.  <u>Cronn v. Buffington</u>, 150 F.3d 538, 544 (5th Cir. 1998)(affirming dismissal where plaintiff failed to allege facts indicating "personal involvement in the acts causing the deprivation of a person's constitutional rights").[16]  Part and

_____

[15]  In keeping with the lack of personal jurisdiction, there is no venue to entertain suit in this district.  Plaintiffs must establish venue pursuant to 28 U.S.C. § 1391(b) "where all defendants reside or. . . [where] the claim arose . . . ."  <u>See</u> <u>Stafford v. Briggs</u>, 444 U.S. 527, 542-44 (1980)(rejecting nationwide venue for damage claims against federal employees in their individual capacities).  Plaintiffs do not point to any statute supporting venue, and state in conclusory fashion, they are "informed and believe that the unlawful acts and injury . . . occurred within approximately a 20 mile distance of the Ports of Entry located in the Southern and Western Districts of Texas. . .," the "majority" in Brownsville and Laredo.  Com. ¶ 2.  Giving the complaint its fairest reading, "the substantial part of the events or omissions giving rise to the claim" occurred in the District of Columbia, though again, any acts or omissions had nothing to do with defendants herein.  Venue does not lie in this district.

[16]  <u>See</u> <u>also</u> <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001)(<u>Bivens</u> "liability is personal, based upon each defendant's own constitutional violations"); <u>Johnson v. Newburgh Enlarged School Dist.</u>, 239 F.3d 246, 254 (2d Cir. 2001)("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages"); <u>Rouse v. Plantier</u>, 182 F.3d 192, 199-200 (3d Cir. 1999)(admonishing district court for not addressing "specific conduct of each of the individual defendants in determining whether that particular defendant acted

-24-

parcel of the requirement to plead personal involvement, "there is no doctrine of *respondeat superior* in <u>Bivens</u> actions." <u>Id.</u> at 544; <u>Saunders v. Bush</u>, 15 F.3d 64, 67 n.6 (5th Cir. 1994) (dismissing <u>Bivens</u> claims against President Reagan and high-ranking federal officials as "doctrine of vicarious liability is not a permissible basis for holding defendants liable").[17]  With respect to personal involvement, the complaint does nothing more than allege that each defendant presently heads an agency that may have some broad responsibility over certain areas of NAFTA. The particular policy decisions that plaintiffs suggest prevent them from realizing certain NAFTA benefits, however, predated <u>any</u> defendant's tenure.  In fact, with respect to defendant Peters, not only do plaintiffs fail to allege facts that establish she

---

in an 'objectively unreasonable' manner"); <u>Gossmeyer v. McDonald</u>, 128 F.3d 481, 495 (7th Cir. 1997) ("personal involvement is a prerequisite for individual liability"); <u>Simpkins v. D.C.</u>, 108 F.3d 366, 369 (D.C. Cir. 1997) ("complaint must at least allege that defendant federal official was personally involved in the illegal conduct"); <u>Pellegrino v. U.S.</u>, 73 F.3d 934, 936 (9th Cir. 1995)("<u>Bivens</u> liability is premised on proof of direct personal responsibility" and defendant cannot "be held vicariously liable for the conduct of another"); <u>Tallman v. Reagan</u>, 846 F.2d 494 (8th Cir. 1985) (per curiam) (affirming dismissal of complaint that did not allege officials' personal involvement); <u>Dewey v. University of New Hampshire</u>, 694 F.2d 1, 3 (1st Cir. 1982), <u>cert. denied</u>, 461 U.S. 444 (1983)(plaintiff must allege facts demonstrating "who did what to whom and why").

[17]  <u>See also</u> <u>Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000)("plaintiff must state a claim for direct rather than vicarious liability; *respondeat superior* is not a viable theory of <u>Bivens</u>"); <u>Buford v. Runyon</u>, 160 F.3d 1199, 1203 n.7 (8th Cir. 1998); <u>Trulock</u>, 275 F.3d at 402.

personally participated in anything, even the agency that she
heads, the Federal Highway Administration, has had no
responsibility over the subject matter since January 1, 2000,[18]
well before she took office.  The instant complaint fails to
conform to the bedrock requirement that plaintiffs allege
personal participation in any alleged, constitutional tort, and
therefore it must be dismissed.

## IV.  The Complaint Fails to Identify the Violation of A Clearly Established Constitutional Right Sufficient to Overcome Qualified Immunity.

Qualified immunity shields government officials performing
discretionary functions "from liability for civil damages insofar
as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[19]  As
the Fifth Circuit recently observed, "to overcome qualified

---

[18]  Congress divested the FHWA of any authority over motor
carriers as of that date when it established the Federal Motor
Carrier Safety Administration, a separate agency of the
Transportation Department.  Motor Carrier Safety Improvement Act
of 1999, P.L. No. 106-159, 106th Cong. 1st Sess., 113 Stat. 1747
(Dec. 9, 1999).

[19]  Qualified immunity is immunity from suit, and discovery
should not be allowed until this threshold issue is decided.
Harlow, 457 U.S. at 818; accord Mitchell v. Forsyth, 472 U.S.
511, 526 (1985)(absent clearly established law, defendant
"pleading qualified immunity is entitled to dismissal before
commencement of discovery"); Seigert v. Gilley, 500 U.S. 226, 232
(1991)(qualified immunity is designed to spare defendant "not
only unwarranted liability, but unwarranted demands customarily
imposed upon those defending a long drawn out law suit").

-26-

immunity," plaintiffs must show defendants:   "(1) violated a
constitutional right that (2) was clearly established at the time
of the violation (3) through conduct that was objectively
unreasonable."  Mowbray v. Cameron County, Texas, 274 F.3d 269,
279 (5th Cir. 2001), cert. denied, __ U.S. __, 2002 WL 386416,
citing, Kipps v. Caillier, 197 F.3d 765, 768 (5th Cir. 1999),
cert. denied, 531 U.S. 816 (2000).  Once defendant pleads
qualified immunity, "the burden shifts to the plaintiff to rebut
this defense by establishing that the official's allegedly
wrongful conduct violated clearly established law."  Bazan v.
Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001).[20]

      Plaintiffs' failure to identify any acts taken by defendants
in this case remains one of the complaint's central flaws.  A
plaintiff's failure in this regard stymies a defendant's ability
to explain his entitlement to qualified immunity.  Recognizing
this fact, where plaintiff "not only fails to allege any facts
indicating that defendant . . . violated clearly established law,
but also fails to make any allegations against [a defendant]
whatsoever," the Fifth Circuit has dismissed Bivens defendants on

---

      [20] Accord Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir.
1992)("[w]e do not require that an official demonstrate that he
did not violate clearly established federal rights; our precedent
places that burden upon plaintiffs"); Pierce v. Smith, 117 F.3d
866, 871-72 (5th Cir. 1997) (where "defendant pleads qualified
immunity and shows he is a governmental official whose position
involves the exercise of discretion, the plaintiff then has the
burden to rebut this defense by establishing that the official's
allegedly wrongful conduct violated clearly established law").

immunity grounds.  <u>Saunders</u>, 15 F.3d at 67.  To the extent
plaintiffs claim some unidentified conduct of defendants Mineta,
Clapp or Peters implicates equal protection, or that defendants
deprived them of some allegedly protected property interest
without due process, they are mistaken.

Regardless of the identify of the defendants, plaintiffs
essentially seek permits to allow their commercial "entry" into
the United States.  Under the circumstances, however, as Mexican
citizens and residents, plaintiffs are not "persons" entitled to
constitutional protections of either due process or equal
protection.  "[I]n extending constitutional protections beyond
the citizenry, the Court has been at pains to point out that it
was the alien's presence within its territorial jurisdiction that
gave the Judiciary power to act."  <u>Kwong Hai Chew v. Colding</u>, 344
U.S. 590, 598 n.5 (1953), <u>citing</u>, <u>Johnson v. Eisentrager</u>, 339
U.S. 763, 770-71 (1950); <u>see also</u> <u>Zadvydas v. Davis</u>, 533 U.S.
678, 693 (2001)("The distinction between an alien who has
effected an entry into the United States and one who has never
entered runs throughout immigration law").  The Supreme Court has
"rejected the claim that aliens are entitled to Fifth Amendment
rights outside the sovereign territory of the United States."
<u>U.S. v. Verdugo</u>, 494 U.S. 259, 269 (1990)(citations omitted).
Similarly, on its face, the Equal Protection Clause applies to
"<u>person</u> <u>within</u> [the relevant] jurisdiction. . ."  U.S.Const.

-28-

Amend. XIV, Sect. 1 (added emphasis).

A Mexican citizen and resident with "no previous significant voluntary connection with the United States" simply is not vested with the rights plaintiffs herein seek to assert. Verdugo, 494 U.S. at 274. Rather, "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." Id. at 271. Given Supreme Court precedent, even if plaintiffs could divine some argument suggesting they are "persons" entitled to constitutional protection, they cannot establish that any claimed right to these guarantees is "clearly established."[21]

### CONCLUSION

Plaintiffs complain over policy judgments made by government officials in the sensitive area of foreign relations. They seek to maintain a suit that Congress has specifically forbidden and that bypasses dispute resolution procedures agreed to by their own sovereign. Ironically, plaintiffs seek civil damages by way of "remedy" from federal officials who were not even in office at

---

[21] See, e.g., Wilson v. Layne, 526 U.S. 603, 617 (1999)(if plaintiffs fail to point to "any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, [or] ... identif[y] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful," qualified immunity precludes suit); Saucier v. Katz, 121 S. Ct. 2151, 2160 (2001)("neither respondent nor the Court of Appeals has identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did").

-29-

the time the challenged decisions were made.  A civil suit for damages is simply not an appropriate or permissible avenue to address plaintiffs' complaints.  For the foregoing reasons, this suit should be dismissed, with prejudice, in its entirety.

                              Respectfully submitted,

                              ROBERT D. McCALLUM, JR.
                              Assistant Attorney General
                              Civil Division

                              JOHN LODGE EULER
                              Acting Director
                              Torts Branch, Civil Division

                              ANDREA W. McCARTHY
                              Senior Trial Counsel
                              Torts Branch, Civil Division

                              MARY HAMPTON MASON
                              Trial Attorney
                              Torts Branch, Civil Division
                              U.S. Department of Justice
                              P.O. Box 7146
                              Ben Franklin Station
                              Washington, D.C. 20044-7146
                              (202) 616-4123

Dated:  May 29, 2002

-30-

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

GUILLERMO BERRIOCHOA LÓPEZ, et al.,   )
                )
         Plaintiffs, )
                )
   v.             )   Case No. 01-208
                )
NORMAN Y. MINETA, et al.,     )
                )
         Defendants. )
_____ )

DECLARATION OF THE HONORABLE NORMAN Y. MINETA,
SECRETARY OF TRANSPORTATION

I, Norman Y. Mineta, declare as follows:

1)  I have been Secretary of the U.S. Department of Transportation since January 25, 2001.

2)  During my entire tenure as Secretary of Transportation, my principal place of employment has been the Department of Transportation headquarters building located in Washington, DC.

3)  During my entire tenure as Secretary of Transportation, I have been a resident of the State of Maryland.

4)  I am familiar with the complaint filed in the above-captioned lawsuit brought against me in my personal capacity in the United States District Court for the Southern District of Texas.

5)  Plaintiffs in the above-referenced complaint have not identified as grounds for their lawsuit any specific actions allegedly taken by me in the State of Texas.

6)  During my entire tenure as Secretary of Transportation, I have had no personal contacts within the State of Texas directly related to plaintiffs' allegations in the above-captioned lawsuit, specifically, my alleged failure to approve applications by persons of Mexican national origin for motor carrier operating permits or for opportunities to invest in, control, or own U.S.-domiciled trucking companies.

2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  **May 21**          , 2002

Norman Y. Mineta
Secretary of Transportation

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GUILLERMO BERRIOCHOA LÓPEZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 01-208 |
| | ) | |
| NORMAN Y. MINETA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF THE HONORABLE JOSEPH M. CLAPP, ADMINISTRATOR
FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

I, Joseph M. Clapp, declare as follows:

1)    I have been Administrator of the Federal Motor Carrier Safety Administration (FMCSA) since October 4, 2001.

2)    During my entire tenure as Administrator of the FMCSA, my principal place of employment has been the Department of Transportation headquarters building located in Washington, DC.

3)    During my entire tenure as Administrator of the FMCSA, I have been a resident of the State of Florida.

4)    I am familiar with the complaint filed in the above-captioned lawsuit brought against me in my personal capacity in the United States District Court for the Southern District of Texas.

5)    Plaintiffs in the above-referenced complaint have not identified as grounds for their lawsuit any specific actions allegedly taken by me in the State of Texas.

6)    During my entire tenure as Administrator of the FMCSA, I have had no personal contacts within the State of Texas directly related to plaintiffs' allegations in the above-captioned lawsuit, specifically, my alleged failure to approve applications by persons of Mexican national origin for motor carrier operating permits or for opportunities to invest in, control, or own U.S.-domiciled trucking companies.

2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date: May 8 , 2002

Joseph M. Clapp
Administrator
Federal Motor Carrier Safety Administration

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GUILLERMO BERRIOCHOA LÓPEZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 01-208 |
| | ) | |
| NORMAN Y. MINETA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF THE HONORABLE MARY E. PETERS,
ADMINISTRATOR, FEDERAL HIGHWAY ADMINISTRATION

I, Mary E. Peters, declare as follows:

1)   I have been Administrator of the Federal Highway Administration since October 2, 2001.

2)   During my entire tenure as Administrator of the Federal Highway Administration (FHWA), my principal place of employment has been the Department of Transportation headquarters building located in Washington, DC.

3)   During my entire tenure as Administrator of the FHWA, I have been a resident of the Commonwealth of Virginia.

4)   I am familiar with the complaint filed in the above-captioned lawsuit brought against me in my personal capacity in the United States District Court for the Southern District of Texas.

5)   Plaintiffs in the above-referenced complaint have not identified as grounds for their lawsuit any specific actions allegedly taken by me in the State of Texas.

6)   During my entire tenure as Administrator of the FHWA, I have had no personal contacts within the State of Texas directly related to plaintiffs' allegations in above-captioned lawsuit, specifically, my alleged failure to approve applications by persons of Mexican national origin for motor carrier operating permits or for opportunities to invest in, control, or own U.S.-domiciled trucking companies.

7)   During my entire tenure as Administrator of the Federal Highway Administration, the Federal Highway Administration has not had the authority to process or take

2

action on applications of Mexican motor carriers for operating and investment authority within the United States.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:      May 17 , 2002

Mary E. Peters
Administrator, Federal Highway Administration

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on May 29, 2002, true copies of the foregoing **Defendants' Motion to Dismiss and Memorandum in Support** with **Exhibits A-C** were served by first class mail, postage pre-paid, upon the following attorneys for the plaintiffs:

**Federico C. Sayre**
**Fernando F. Chavez**
Sayre & Chavez
900 North Broadway, 7th Street
Santa Ana, CA 92701
Tel: (714) 550-9117
Fax: (714) 550-9125

**Horacio L. Barrera**
Martinez & Barrera, LLP
1201 East Van Buren
Brownsville, Tx 78520
Tel:  (956) 546-7159
Fax:  (956) 544-0602

MARY HAMPTON MASON