2 0

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

GUILLERMO BERRIOCHOA LOPEZ, *et al.*,       )
                                            )
              Plaintiffs,                    )
                                            )
         v.                                  )  C.A. No. B-01-208
                                            )
NORMAN Y. MINETA, Secretary of the          )
Department of Transportation, *et al.*,      )
                                            )
              Defendants.                    )
_____)

JUL 2 9 2002

Michael N. Milby
Clerk of Court

**REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . ii

I.     Plaintiffs' Reference to the "Effects Test" Does Not
       Obviate the Need to Establish Both Minimum Contacts
       and Venue over Defendants in Texas . . . . . . . . . . . 1

II.    No Private Right of Action Exists to Remedy Perceived
       Constitutional Inadequacies in the Implementation
       of NAFTA . . . . . . . . . . . . . . . . . . . . . . . . 5

       1.   Congress Has Precluded this Suit . . . . . . . . . 5

       2.   Special Factors Counsel Against Implying the
            Novel Right of Action Plaintiffs Ask this Court
            to Create . . . . . . . . . . . . . . . . . . . . . 7

III.   Broad-Brush Allegations of Unconstitutional "Policy"
       Do Not State a Bivens Claim . . . . . . . . . . . . . . 10

IV.    Plaintiffs Do Not Identify a "Clearly Established
       Constitutional Right" Sufficient to Overcome
       Defendants' Qualified Immunity . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**Cases:**

Alpine View v. Atlas Copco,
205 F.3d 208 (5th Cir. 2000) . . . . . . . . . . . . . . . . . 5

Anderson v. Creighton,
483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . 15

Baldwin v. Daniels,
250 F.3d 943 (5th Cir. 2001) . . . . . . . . . . . . . . . 13

Bivens v. Six Unknown Federal Narcotics Agents,
403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . 6

Blackburn v. City of Marshall,
42 F.3d 925 (5th Cir. 1995) . . . . . . . . . . . . . . . 10, 13

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . 5

Burns v. Harris County Bail Bond Bd.,
139 F.3d 513 (5th Cir. 1998) . . . . . . . . . . . . . . . 13

Bush v. Lucas,
462 U.S. 367 (1983) . . . . . . . . . . . . . . . . . . . 9

Calder v. Jones,
465 U.S. 783 (1984) . . . . . . . . . . . . . . . . . . . 3-5

Dahler v. Goodman,
2001 WL 99848 (D.Kan.) . . . . . . . . . . . . . . . . . . 3

Examining Bd. of Engineers v. Flores De Otero,
426 U.S. 572 (1975) . . . . . . . . . . . . . . . . . . . 12

Felch v. Transportes Lar-Mex,
92 F.3d 320 (5th Cir. 1996) . . . . . . . . . . . . . . . 5

Fiallo v. Bell,
430 U.S. 787 (1977) . . . . . . . . . . . . . . . . . . . 14

Garrett v. Klingner,
12 Fed.Appx. 842, 2001 WL 649132 (10th Cir.)(unpublished) . . . 3

Hampton v. Mow Sun Wong,
426 U.S. 88 (1976) . . . . . . . . . . . . . . . . . . . 14

<u>Harbury v. Deutch</u>,
233 F.3d 596 (D.C. Cir. 2000), <u>rev'd.</u>,
<u>Christopher v. Harbury</u>,
122 S. Ct. 2179 (2002) . . . . . . . . . . . . . . . . . 13


<u>Hirabayashi v. U.S.</u>,
320 U.S. 81 (1943) . . . . . . . . . . . . . . . . . . . 12


<u>Hyde Park Co. v. Santa Fe</u>,
226 F.3d 1207 (10th Cir. 2000) . . . . . . . . . . . . . 13


<u>IMO Indus. v. Kiekert AG</u>,
155 F.3d 254 (3d Cir. 1998) . . . . . . . . . . . . . . . 4


<u>Jean v. Nelson</u>,
727 F.2d 957 (11th Cir. 1984)(<em>en banc</em>),
<u>aff'd</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>,
472 U.S. 846 (1985) . . . . . . . . . . . . . . . . . . . 14


<u>Jones v. Petty-Ray Geophysical, Geo.</u>,
954 F.2d 1061 (5th Cir.), <u>cert.</u> <u>denied</u>,
506 U.S. 867 (1992) . . . . . . . . . . . . . . . . . . . 3


<u>Korematsu v. U.S.</u>,
323 U.S. 214 (1945) . . . . . . . . . . . . . . . . . . . 12


<u>Landon v. Plasencia</u>,
459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . . . 14


<u>Management Insights v. CIC Enter.</u>,
194 F. Supp. 2d 520 (N.D. Tex. 2001) . . . . . . . . . . . 4


<u>Mathews v. Diaz</u>,
426 U.S. 67 (1976) . . . . . . . . . . . . . . . . . . . 14


<u>Merritt v. Hawk</u>,
153 F. Supp. 2d 1216 (D. Col. 2001) . . . . . . . . . . . 3


<u>Michalik v. Hermann</u>,
2001 WL 434489 (E.D. La.) . . . . . . . . . . . . . . . . 3


<u>Moore v. Mississippi Valley State Univ.</u>,
871 F.2d 545 (5th Cir. 1989) . . . . . . . . . . . . . . 13


<u>Narenji v. Civiletti</u>,
481 F. Supp. 1132 (D.D.C. 1979), <u>rev'd.</u>,
617 F.2d 745 (D.C. Cir.), <u>cert.</u> <u>denied</u>,
446 U.S. 957 (1980) . . . . . . . . . . . . . . . . . . . 12

Nixon v. Fitzgerald,
457 U.S. 731 (1982) . . . . . . . . . . . . . . . . . . . 2

Nwanze v. Philip Morris,
100 F. Supp. 2d 215 (S.D. N.Y. 2000), aff'd.,
2001 WL 409450 (2d Cir.), cert. denied,
122 S. Ct. 369 (2001) . . . . . . . . . . . . . . . . . . 3

Oyama v. California,
332 U.S. 633 (1948) . . . . . . . . . . . . . . . . . . 12

Panda Brandywine v. PEPCO,
253 F.3d 865 (5th Cir. 2001) . . . . . . . . . . . . . . 4

Rodriguez-Silva v. I.N.S.,
242 F.3d 243 (5th Cir. 2001) . . . . . . . . . . . . 14, 15

Schweiker v. Chillicky,
487 U.S. 412 (1988) . . . . . . . . . . . . . . . . 6, 8, 10

Smirch v. Allied Shipyard,
164 F. Supp. 2d 903 (S.D. Tex. 2001) . . . . . . . . . . 5

Tang-Fortaleche v. Lincoln,
892 F.2d 75, 1989 WL 152520 (4th Cir.)(unpublished) . . . . . . 3

U.S. v. Shaughnessy,
338 U.S. 537 (1950) . . . . . . . . . . . . . . . . . . 14

U.S. v. Thames,
214 F.3d 608 (5th Cir. 2000) . . . . . . . . . . . . . 10

Wein Air Alaska v. Brandt,
195 F.3d 208 (5th Cir. 1999) . . . . . . . . . . . . . . 5

Wojcik v. City of Romulus,
257 F.3d 600 (6th Cir. 2001) . . . . . . . . . . . . . 13

Williams v. U.S.,
165 F.3d 30, 1998 WL 537579 (6th Cir.)(unpublished) . . . . . . 3

Zadvydas v. Davis,
533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . 13

Zieper v. Reno,
111 F. Supp. 2d 484 (D. N.J. 2000) . . . . . . . . . . . 4

**Statutes and Other Authorities:**

19 U.S.C. § 3312(c)(1)(A) . . . . . . . . . . . . . . . . . . 6

49 U.S.C. § 13902 . . . . . . . . . . . . . . . . . . . 2, 11

NAFTA Implementation Act, 1993 WL 561124  . . . . . . . . . . 7

Pursuant to Local Rule 7 and this Court's orders of April 30 and June 28, 2002, defendants reply to Plaintiffs' Opposition to their Motion to Dismiss.  As none of plaintiffs' arguments overcomes the patent deficiencies of the Complaint and the ample and controlling authorities cited in defendants' Motion to Dismiss, dismissal is warranted as a matter of law.

I.  **Plaintiffs' Reference to the "Effects Test" Does Not Obviate the Need to Establish Both Minimum Contacts and Venue over Defendants in Texas**.

In arguing they have properly sued defendants in this forum, plaintiffs make three critical errors.  First, they point to acts taken by non-party former federal officials, most notably former President Clinton, rather than those of defendants Mineta, Clapp or Peters, to resolve what is quite clearly a personal defense.  Second, they rely on defendants' official status as the heads of their respective agencies, a fact legally insufficient to establish personal jurisdiction in a <u>Bivens</u> suit.  Finally, they propose a standard of "minimum contacts" by which, regardless of an individual's relation to the forum, actions taken in one state establish jurisdiction over federal officials nationwide, so long as plaintiffs allege some effect in the forum.  None of these propositions is consonant with defendants' due process rights.

As in their Complaint, plaintiffs do not point to a single action that occurred in Texas, and it is clear that the "acts" they contest were not taken by defendants.  For instance, they complain of "executive branch regulations," promulgated by

"Clinton Administration officials," and "Memoranda signed by President Clinton." Opp. at 1, 15. There is no <u>conceivable</u> theory under which these acts support personal jurisdiction over Mineta, Clapp or Peters, let alone a constitutionally sound one.[1]

The only "act" plaintiffs allude to arguably occurring in defendants' tenure is the United States' alleged "continued policy of refusing to process the applications of Mexican citizens."[2] Opp. at 3. Plaintiffs concede that to the extent defendants "acted" in this regard, they did so at "headquarters" in Washington, D.C.[3] Opp. at 24. Nonetheless, without citation to authority, plaintiffs posit that "the mere presence" of DOT "field offices throughout the State," somehow supports <u>personal</u>

---

[1] Of course, plaintiffs' real problem is that as "former President of the United States," President Clinton, who imposed the moratorium that is the Complaint's principal target, is absolutely immune "from damages liability predicated on his official acts." <u>Nixon v. Fitzgerald</u>, 457 U.S. 731, 749 (1982). Plaintiffs cannot evade absolute immunity by naming federal officials neither responsible for the conduct at issue, nor even in office when it occurred.

[2] Plaintiffs' argument assumes defendants have the <u>power</u> to process the disputed applications. However, as noted in defendants' motion and explained, *infra*, <u>both</u> by Presidential Memorandum <u>and</u> by Act of Congress they do <u>not</u>. Mot. To Dis. at 5, n. 5 <u>citing</u> 49 U.S.C. § 13902, note. It is therefore unclear what exactly plaintiffs would have the named individuals <u>do</u>.

[3] Plaintiffs do not challenge the Declarations, Ex. A-C, establishing that defendants have no Texas contacts. They fail further to respond to the fact that, with respect to defendant Peters, the permit application system has not been under the Federal Highway Administration's purview in her tenure.

-2-

jurisdiction.  Opp. at 4, 24.[4]  In fact, courts <u>routinely</u> reject
this theory, holding that supervising a federal agency, "the
reach of which extends into every state," is insufficient to
support personal jurisdiction.[5]  Plaintiffs would require federal
officials to answer suit in their individual capacity in any
forum in the country, regardless of their contacts there.  Such a
construction is not compatible with due process.[6]

    <u>Calder v. Jones</u>, cited extensively by plaintiffs, is not to

---

    [4] Even the few cases plaintiffs refer to in discussing
minimum contacts do not support the proposition that an office in
Texas is sufficient to compel a non-resident defendant's presence
in court.  <u>See</u>, <u>e.g.</u>, Opp. at 24, <u>citing</u> <u>Jones v. Petty-Ray</u>
<u>Geophysical, Geo.</u>, 954 F.2d 1061, 1069 (5th Cir.), <u>cert.</u> <u>denied</u>,
506 U.S. 867 (1992)(defendant's "Houston office is nothing more
than a fortuity," insufficient to support personal jurisdiction).

    [5] <u>Michalik v. Hermann</u>, 2001 WL 434489, *3 (E.D. La.),
<u>citing</u>, <u>Nwanze v. Philip Morris</u>, 100 F. Supp. 2d 215, 220 (S.D.
N.Y. 2000), <u>aff'd.</u>, 2001 WL 409450 (2d Cir.), <u>cert.</u> <u>denied</u>, 122
S. Ct. 369 (2001); <u>Merritt v. Hawk</u>, 153 F. Supp. 2d 1216, 1229
(D. Col. 2001)(BOP Director lacked sufficient contacts with
Colorado for personal jurisdiction in <u>Bivens</u> suit by Colorado
inmate); <u>Dahler v. Goodman</u>, 2001 WL 99848, *2 (D.Kan.)(same).

    [6] Mot. to Dis. at 22, n. 14 (citing <u>Bivens</u> cases finding no
minimum contacts); <u>accord</u> <u>Garrett v. Klingner</u>, 12 Fed.Appx. 842,
844, 2001 WL 649132, *2 (10th Cir.)(unpublished)(that BOP doctor
"treated inmates from the forum state-as well as inmates 'from
all over the country'- and supervised the medical care delivery
process" in forum state "fall[s] short of the contacts required
to satisfy due process"); <u>Williams v. U.S.</u>, 165 F.3d 30, 1998 WL
537579, *6 (6th Cir.)(unpublished)("that [IRS agent] would have
had to make phone calls or sent mailings to Kentucky fails to
show [he] availed himself of the privilege of acting in the
forum"); <u>Tang-Fortaleche v. Lincoln</u>, 892 F.2d 75, 1989 WL 152520,
*1 (4th Cir.)(unpublished)("government's selection of Virginia as
the trial forum is irrelevant [to] establishing [DEA agents], in
their individual capacities, had purposefully availed themselves
of the privilege of conducting activities in the forum").

the contrary.  <u>Calder</u> does not stand for the proposition that jurisdiction exists so long as defendant's conduct has "injurious effect" in the state.  Opp. at 23.  Rather, the Court found that an allegedly defamatory article, though published in Florida,

> . . . concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, <u>and</u> the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California.

465 U.S. 783, 788 (1984).

"Conduct which has an effect in [the forum] by itself ... is not enough to sustain personal jurisdiction." <u>Zieper v. Reno</u>, 111 F. Supp. 2d 484, 492 (D. N.J. 2000)(no jurisdiction over <u>Bivens</u> defendant under <u>Calder</u>), <u>citing</u> <u>IMO Indus. v. Kiekert AG</u>, 155 F.3d 254, 265 (3d Cir. 1998).  "Such a finding would allow every plaintiff who filed suit in his home state to justify the assertion of jurisdiction over a defendant." <u>Management Insights v. CIC Enter.</u>, 194 F. Supp. 2d 520, 526 (N.D. Tex. 2001).  In keeping, "<u>Calder</u> has been limited to those situations where a plaintiff can point to contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." <u>Zieper</u>, 111 F. Supp. 2d at 492.  Any other reading "completely vitiate[s] the constitutional requirement of minimum contacts and purposeful availment." <u>Panda Brandywine v. PEPCO</u>, 253 F.3d 865,

-4-

870 (5th Cir. 2001)(rejecting plaintiffs' <u>Calder</u> construction).

In assessing whether or not defendant directed his conduct at the forum under <u>Calder</u>, the Fifth Circuit has considered facts such as "letters, faxes, or phone calls to Texas" by the defendant, none of which are alleged or exist here.  <u>Wein Air Alaska v. Brandt</u>, 195 F.3d 208, 212 (5th Cir. 1999).  Plaintiffs do not reside in Texas, defendants work in Washington, D.C., and have no personal contacts in Texas over this matter.  Plaintiffs do not allege the applications are even sent to Texas.  That Texas, along with any number of states, has a border contiguous to plaintiffs' residences in Mexico is a "mere fortuity."[7]  There is nothing to indicate defendants "purposefully established minimum contacts" in this forum, and they must be dismissed for want of jurisdiction.  <u>Alpine View v. Atlas Copco</u>, 205 F.3d 208, 215 (5th Cir. 2000), <u>citing</u>, <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985).

## II.  <u>No Private Right of Action Exists to Remedy Perceived Constitutional Inadequacies in the Implementation of NAFTA.</u>

### 1.  **Congress Has Precluded this Suit.**

In an opposition filled with overstatement and hyperbole,

---

[7]  <u>Felch v. Transportes Lar-Mex</u>, 92 F.3d 320, 328 (5th Cir. 1996)(transporting goods from Mexico "across the border and into Laredo Texas" insufficient to support jurisdiction); <u>Smirch v. Allied Shipyard</u>, 164 F. Supp. 2d 903, 909 (S.D. Tex. 2001); (plaintiffs' injury in Texas "relies on the mere fortuity that [they] reside and work in Texas, not the fact that defendant directed specific acts towards Texas").

perhaps the most glaring error is plaintiffs' failure to respond
in any meaningful way to Congress's command:  "No person other
than the United States shall have any cause of action or defense"
under NAFTA.  19 U.S.C. § 3312(c)(1)(A).  Plaintiffs' running
argument, that this case is not "about" NAFTA but about "<u>Bivens</u>
theory" and "constitutional law," is pure sophistry.  Opp. at 2,
10.  Uniform and consistent Supreme Court precedent on <u>whether</u> to
recognize a cause of action for alleged constitutional violations
in the <u>Bivens</u> context explicitly acknowledges that <u>one</u> of the
circumstances in which courts are prohibited from doing so is
where "Congress has explicitly precluded" one.  Mot. to Dis. at
12 <u>and</u> subheading I(B)(1).  Indeed, that maxim was recognized by
the Supreme Court in <u>Bivens</u> itself.  <u>Bivens v. Six Unknown
Federal Narcotics Agents</u>, 403 U.S. 388, 396 (1971)(discussing
damages remedy "in the absence of affirmative action by Congress"
or "explicit congressional declaration").  Against this backdrop,
plaintiffs' repeated reliance on cases discussing whether the
Constitution was violated to answer the question of whether a
cause of action for damages should be judicially implied to
remedy any alleged violation is disingenuous at best.[8]

---

[8]  Plaintiffs discuss <u>whether</u> a cause of action exists only
in two places.  Opp. at 4-8, 9-12.  In that entire discussion,
only two cases <u>squarely</u> address the circumstances under which
courts should imply a constitutional remedy, <u>Correctional Serv.
Corp. v. Malesko</u>, and <u>Chillicky</u>, and both <u>support</u> dismissal.  <u>See</u>
Mot. to Dis. at 10-12, 16-21.  The remaining cases simply do not
speak to whether an action exists in the first instance.

2.  **Special Factors Counsel Against Implying the Novel Right of Action Plaintiffs Ask this Court to Create.**

Independent of Congress's decision to foreclose NAFTA-related private party litigation, the Supreme Court's "special factors" rationale also precludes this suit.  Here, two distinct and again independent bases warrant dismissal:  first, Legislative and Executive prerogatives in foreign relations; and second, the negotiated, state-to-state dispute resolution procedures of Chapter 20 of NAFTA.  Mot. to Dis. at 13-22.

With respect to the judiciary's consistent refusal to recognize implied rights of action that impinge on the authority of coordinate branches to conduct foreign affairs, plaintiffs only answer is the bald claim that this suit "would not impinge on the Executive and Legislative prerogatives in the sensitive area of foreign relations."  Opp. at 10.  As defendants' motion observes, Congress itself recognized that private suits alleging "consistency (or inconsistency) with the NAFTA" threaten to "interfere with the Administration's conduct of trade and foreign relations and with suitable resolution of disputes under the[] Agreement[]."  Mot. to Dis. at 5, citing NAFTA Implementation Act, 1993 WL 561124, *9.  Fundamentally, plaintiffs either misapprehend or choose to turn a blind eye to the nature of individual capacity suits against federal officials.  If, as plaintiffs would have this court conclude, the alleged failure to comply with a treaty or international agreement such as NAFTA

could support a private right of action for damages against federal employees personally, then members of the Executive or Legislative Branches who act in the international arena would always have to consider the ramifications of such suits.[9] Exposing federal employees not only to potential liability but the burdens of litigation, in turn, would be a significant disincentive for the United States to enter into agreements that might otherwise be in our nation's interests, and would directly influence foreign affairs.

Plaintiffs' plea that this court ignore the Supreme Court's decision in <u>Schweiker v. Chillicky</u>, and the dispute resolution mechanisms in NAFTA itself is no more compelling. The special factors analysis does not rely, as plaintiffs suggest, on the presence or absence of "any meaningful form of review or relief <u>for petitioners</u>." Opp. at 11 (emphasis added). As the Supreme Court explained, "the concept of 'special factors counseling hesitation . . . has proved to include an appropriate judicial deference to indications that congressional inaction has not been

---

[9]    Treaties and other international accords by their very nature involve certain potential "benefits" to the citizens of countries who enter into them. Were plaintiffs' theory of liability in this case correct, any foreign national whose government entered into an agreement with the United States could claim national origin "discrimination" for the United States' alleged failure to comply with its terms. Such a construction turns the ample and controlling jurisprudence on the state-to-state nature of international agreements -- that they are not self-executing and do not create privately enforceable rights -- on its head. <u>See</u> Mot. to Dis. at 9-10, and <u>cases cited therein.</u>

inadvertent." <u>Chilicky</u>, 487 U.S. 412, 423 (1988).  This
rationale does "not concern the merits of the particular remedy
that was sought," but rather "the question of who should decide
whether such a remedy should be provided." <u>Bush v. Lucas</u>, 462
U.S. 367, 380 (1983).  The Court elaborated,

> . . . [the] question is not what remedy the court should
> provide for a wrong that would otherwise go unredressed.  It
> is whether an elaborate remedial system that has been
> constructed step by step, with careful attention to
> conflicting policy considerations, should be augmented by
> the creation of a new judicial remedy for the constitutional
> violation at issue.

<u>Id.</u> at 388.  In other words, when Congress speaks comprehensively
in an area, whatever particular method of grievance resolution
they may have chosen, special factors counsel against grafting on
additional remedies that Congress has declined to include.  <u>See</u>
Mot. to Dis. at 16-20 <u>and</u> <u>cases</u> <u>cited</u> <u>therein</u>.

     With respect to NAFTA and the permit application process,
the remedial mechanism chosen by the Executive and Legislative
Branches, as well as plaintiffs' own country representatives, was
Chapter 20.  Plaintiffs, as individuals, cannot avail themselves
to that remedy because that is not the method that those who
negotiated NAFTA's terms and made it a part of U.S. domestic law
chose to include in the comprehensive scheme.  The fact, as
plaintiffs concede, that "NAFTA excludes the plaintiffs from
seeking redress under [Chapter 11] the <u>only</u> Chapter <u>intended</u> <u>by</u>
<u>the</u> <u>NAFTA</u> <u>Parties</u> to be used to settle disputes involving private

citizens," reinforces why none is available here.  Opp. at 11, 12
(emphasis added).  The creators of NAFTA knew how to provide for
individual remedies when they so chose.  Under the circumstances,
the decision not to provide a right of action for disputes
arbitrable under Chapter 20, and instead rely on state-to-state
negotiations with resort if necessary to an arbitral panel,
cannot be considered "inadvertent."  Chilicky, 487 U.S. at 423.[10]

## III. Broad-Brush Allegations of Unconstitutional "Policy" Do Not State a Bivens Claim.

Plaintiffs spend a scant page of their opposition, citing
one case, in response to their failure to set forth facts of
defendants' personal involvement in any claimed constitutional
violation.  They make no effort to distinguish the numerous
authorities that hold conclusory allegations of personal
participation do not state a Bivens claim.  Mot. to Dis. at 24-
26.  The contention that defendants "as a matter of policy and as
a pattern of practice and custom have knowingly and with
deliberate indifference failed to approve applications" is a
legal conclusion, not a well-pled "fact."  Blackburn v. City of
Marshall, 42 F.3d 925, 931 (5th Cir. 1995)("conclusory
allegations or legal conclusions masquerading as factual

----

[10]  Plaintiffs offer no response to the authorities that
establish why no action lies under 42 U.S.C. § 1981, Mot. to Dis.
at 21, n.13, and have waived all claims respecting it.  U.S. v.
Thames, 214 F.3d 608, 612, n.3 (5th Cir. 2000)(arguments "neither
listed in [...] 'Statement of Issues Presented for Review' nor
addressed in the body of his brief ... "must be deemed waived").

conclusions will not suffice to prevent a motion to dismiss").

Not only do plaintiffs fail to identify any act by Mineta, Clapp or Peters indicating personal involvement, the agencies they supervise do not even have the <u>authority</u> to process the disputed applications. That is true as a matter of legislative fiat. 49 U.S.C. § 13902(c)(4) <u>and</u> note. While plaintiffs try to diminish the significance of the moratorium on issuing permits, claiming it is inconsistent with NAFTA,[11] they do not even address the Acts of Congress that currently control DOT's conduct in this matter, <u>cited</u> <u>in</u> Mot. to Dis. at 5, n.5. Congress has forbidden DOT to approve the applications of Mexican carriers that are the subject of this suit. Plaintiffs' failure to discuss the post-NAFTA laws is especially troublesome because they urge that the "most recent provision" of law is "paramount." Opp. at 14-15. In any event, defendants as officers of the United States, are bound to follow the law. These provisions are a complete defense to defendants' alleged tortious conduct.

## IV. <u>Plaintiffs Do Not Identify a "Clearly Established Constitutional Right" Sufficient to Overcome Defendants' Qualified Immunity.</u>

Plaintiffs' constitutional arguments are unfocused at

---

[11]    As noted previously, whether or not the Presidential order is "paramount" federal law, Opp. at 14-15, does not control any <u>Bivens</u> claim against defendants herein. Any challenge to the validity of that order, and in turn the existence of an implied right for damages over its legality, is barred by absolute immunity. <u>See</u> n. 1, *supra*.

best.[12]  They discuss concepts of procedural due process, substantive due process, equal protection and even the First Amendment, indiscriminately, with no regard for the fact that each right at issue has its own doctrinal law and requirements. Cases are cited carelessly, out of context, for sweeping propositions they do not support, and some have even been overturned on appeal.[13]  Plaintiffs' all-over-the-map approach to

---

[12]  Plaintiffs cannot bootstrap NAFTA onto the Constitution. Opp. at 14-16, 28.  Congress cannot create constitutional rights by statute that do not otherwise exist.  If plaintiffs have a constitutional right, it rises or falls with the Constitution and Supreme Court precedent interpreting it.

[13]  For instance, plaintiffs claim that the failure to consider their applications was a "Taking Without Due Process." Opp. at 16.  Whether a "taking" is sufficiently alleged would have to be judged on the distinct subset of Due Process cases dealing with "takings."  Under the point heading in question, however, plaintiffs cite truisms such as, distinctions based on "national origin are odious to a free people," from portions of cases addressing equal protection, not due process.  See, e.g., Pl. Op. at 16-17, citing Hirabayashi v. U.S., 320 U.S. 81, 100 (1943); Oyama v. California, 332 U.S. 633, 646 (1948); Korematsu v. U.S., 323 U.S. 214, 216 (1945).  Even then, the Supreme Court cases all involve the rights of "American citizens of Japanese ancestry."  Id.; see also Opp. at 17, Examining Bd. of Engineers v. Flores De Otero, 426 U.S. 572 (1975)(discussing constitutional rights of resident aliens).  The only other case cited in that subsection, a 1979 district court case, was reversed, a fact plaintiffs' opposition does not disclose.  Pl. Op. at 17, citing Narenji v. Civiletti, 481 F. Supp. 1132 (D. D.C. 1979), rev'd., 617 F.2d 745 (D.C. Cir.), cert. denied, 446 U.S. 957 (1980).

Similarly, plaintiffs rely on a D.C. Court of Appeals' case to support their claim that they have a property interest that involves the death of an alien married to a U.S. citizen.  The legal issue was whether under Verdugo, the complainant, who had been deprived of "life," was a "person" entitled to due process; the case does not discuss the nature or scope of property interests.  Ultimately, the court concluded no due process right

constitutional analysis hampers meaningful response to their
claimed "rights." Nonetheless, the following summarizes their
failure to establish a constitutional claim:

(1)  Plaintiffs are not within the class of "persons" entitled to
     the constitutional protections they assert;[14]

(2)  Plaintiffs have no protectible property interest in an
     "invitation by the United States to have Mexican citizens
     make application" for permits, Opp. at 17;[15]

_____

existed, although it found an actionable Bivens claim for denial
of access to courts. Harbury v. Deutch, 233 F.3d 596 (D.C. Cir.
2000). Subsequently, the Supreme Court reversed the access to
courts holding, subsequent history not reflected in plaintiffs'
brief. Christopher v. Harbury, 122 S. Ct. 2179 (2002).

[14] Mot. to Dis. at 28-29, and cases cited therein; accord
Zadvydas v. Davis, 533 U.S. 678, 693 (2001)("well established
that certain constitutional protections available to persons
inside the United States are unavailable to aliens outside of our
geographic borders").

[15] The "existence of a governmental program or authority
empowered to grant a particular type of benefit" is not a
constitutionally protected property interest. Blackburn, 42 F.3d
at 941; Baldwin v. Daniels, 250 F.3d 943, 949 (5th Cir. 2001)(no
property interest in soliciting agent's license). An application
for a license to work or conduct business does not create a
property interest. Burns v. Harris County Bail Bond Bd., 139
F.3d 513, 520 (5th Cir. 1998)(no "property interest in a bail
bond license on March 8, 1995 -- plaintiff had no valid license
on that date"); Moore v. Mississippi Valley State Univ., 871 F.2d
545, 550 (5th Cir. 1989)("invitation" to submit job applications
did not create "claim of entitlement" required to establish
property interest); Wojcik v. City of Romulus, 257 F.3d 600, 610
(6th Cir. 2001)(noting "applicant for a liquor license" under
Michigan law "as distinguished from a license holder facing
renewal or revocation proceedings, does not have a protected
[property] interest"); Hyde Park Co. v. Santa Fe, 226 F.3d 1207,
1212 (10th Cir. 2000)(no protectible property interest in the
approval of plaintiffs' proposed subdivision application).

-13-

(3)    Even if merely filing an application triggered a protectible

       interest, as non-resident aliens, plaintiffs have been given

       all the process they are "due"[16];

(4)    Consonant with equal protection, Congress may deny non-

       resident aliens "entry," commercial or otherwise, into the

       United States based upon national origin, and have done so

       here.[17]    49 U.S.C. § 13902, note.

---

[16]    The Supreme Court has "long held that an alien seeking
initial admission to the United States request[s] a privilege and
has no constitutional right regarding his application, for the
power to admit or exclude aliens is a sovereign prerogative."
Landon v. Plasencia, 459 U.S. 21, 32 (1982); Fiallo v. Bell, 430
U.S. 787, 792 (1977)(Court has "long recognized the power to
expel or exclude aliens as a fundamental sovereign attribute
exercised by the Government's political departments largely
immune from judicial control").  "Whatever the procedure
authorized by Congress is, it is due process as far as an alien
denied entry is concerned."  U.S. v. Shaughnessy, 338 U.S. 537,
543-44 (1950); Jean v. Nelson, 727 F.2d 957, 968 (11th Cir. 1984)
(en banc)("Aliens seeking admission to the United States ... have
no constitutional rights with regard to their applications and
must be content to accept whatever statutory rights and
privileges they are granted by Congress"), aff'd in part on other
grounds, 472 U.S. 846 (1985).  Congress agreed to Chapter 20 and
the manner in which NAFTA-related disputes were to be arbitrated;
that is the process plaintiffs are due.  Now, Congress has for
the time being precluded the processing of applications for
plaintiffs' commercial "entry" into this country, also
constitutionally permissible.

[17]    Equal protection applies to the federal government via
the Fifth Amendment, though the scope of federal equal protection
is not coterminous with that applicable to states.  Rodriquez-
Silva v. I.N.S., 242 F.3d 243, 247 (5th Cir. 2001), citing
Hampton v. Mow Sun Wong, 426 U.S. 88 (1976).  These differences
are particularly acute "if the legislation [is] related to
immigration."  Id.  "In the exercise of its broad power over
naturalization and immigration, Congress regularly makes rules
that would be unacceptable if applied to citizens."  Mathews v.
Diaz, 426 U.S. 67, 80 (1976).  "Equal protection principles. . .

-14-

Even were there any debate over these maxims, the problem for plaintiffs is twofold:  not only must they identify a constitutional right, it must be clearly established in the caselaw.  Plaintiffs' strained "analog[ies]," Opp. at 19, 28, and recitation of cases that simply are not on point can never carry their burden to come forth with "clearly established" law. Anderson v. Creighton, 483 U.S. 635, 640 (1987)(for immunity purposes, alleged right must be "clearly established" in a "more particularized and hence more relevant sense").  There is simply no basis to deny defendants' qualified immunity.

### CONCLUSION

The ample authorities cited in defendants' motion to dismiss and this reply mandate dismissal of this case.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division

MARY HAMPTON MASON
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044-7146
Tel. (202) 616-4123
Fax. (202) 616-4314
Dated: July 26, 2002          D.C. Bar # 427461

---

do not in any way restrict Congress's power to use nationality or place of origin as criteria for the naturalization of aliens or for their admission to or exclusion or removal from the United States."  Rodriguez-Silva, 242 F.3d at 248.  "It is not for this Court to question Congress's decisions on such matters."  Id.

-15-

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2002, a true copy of the foregoing **Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss** was served by first class mail, postage pre-paid, upon the following attorneys for the plaintiffs:

**Federico C. Sayre**
**Fernando F. Chavez**
Sayre & Chavez
900 North Broadway, 7th Street
Santa Ana, CA 92701
Tel: (714) 550-9117
Fax: (714) 550-9125

**Horacio L. Barrera**
Martinez & Barrera, LLP
1201 East Van Buren
Brownsville, Tx 78520
Tel:  (956) 546-7159
Fax:  (956) 544-0602

MARY HAMPTON MASON