IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

OCT 2 8 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| GUILLERMO BERRIOCHOA LOPEZ, *et al.* | § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. B-01-208 |
| | § | |
| NORMAN Y. MINETA, Secretary of the Department of Transportation, MARY E. PETERS, Administrator, Federal Highway Administration, JOSEPH M. CLAPP, Administrator, Federal Motor Carrier Safety Administration, and Does 1-100, inclusive, | § § § § § § § § | |
| Defendants. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court are Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, Improper Venue and Failure to State a Claim Upon Which Relief Can be Granted (Docket No. 12) pursuant to FED. R. CIV. P. Rule 12(b)(1) - (3) and (6). Plaintiffs have filed a Motion in Opposition to the Motion to Dismiss (Docket No. 19). For the reasons stated below, it is recommended that Defendants' Motion be granted and this case be dismissed.

### I. Factual Background

The summary of Plaintiffs' factual allegations is drawn from their complaint and for purposes of this analysis is taken as true.

Plaintiffs are a group of citizens and residents of Mexico who own, operate, or have interests in land transportation businesses, namely the transportation of goods by truck. They have submitted applications with the United States Department of Transportation ("D.O.T.") for

truck operating permits, pursuant to the North American Free Trade Agreement[1] ("NAFTA"), approved[2] by Congress on December 8, 1993, proclaimed into law by President Clinton,[3] with an effective date of January 1, 1994. If granted, these permits would allow Mexican owned and Mexican domiciled truck companies to operate legally within the entire United States.

Beginning with the Bus Regulatory Reform Act of 1982[4], the United States established a moratorium on the issuance of operating permits to motor carriers domiciled in, or owned by persons of a contiguous foreign country. A Presidential Memorandum signed Sept. 20, 1982, excluded the application of this moratorium to Canada, but continued it as to Mexico. The United States subsequently refused to allow Mexican domiciled trucks to provide transport services by extending this moratorium via additional memoranda.[5] Consequently, transports originating in Mexico and ending in U.S. destinations, as well as transport between different U.S. destinations were banned.

Currently, the United States continues to prohibit Mexican domiciled trucks from operating in the United States beyond the commercial zone of border towns and as a result, fails to honor its obligations under NAFTA. In particular, recent legislation[6] mandated that no funds may be obligated or expended for the review or processing of an application by a Mexican motor carrier for authority to operate beyond United States municipalities and commercial zones on the

---

[1] North American Free Trade Agreement, December 18, 1992, 32 I.L.M. 289.

[2] Pub. L. 103-182, Title I, §101, 107 Stat. 206.1 (1993).

[3] 29 Weekly Compilation of Presidential Documents, 2641, Jan. 3, 1994.

[4] Pub. L. No. 97-261, 96 Stat. 1102 (1982) (current version at 49 U.S.C. §13902 (1996)).

[5] 49 F.R. 35001(Aug. 30, 1984); 51 F.R. 34079 (Sept. 23, 1986); 53 F.R. 36430 (Sept. 15, 1988); 55 F.R. 38657 (Sept. 17, 1990); 57 F.R. 44647 (Sept. 25, 1992); 60 F.R. 12393 (Mar. 2, 1995).

[6] P.L. No. 107-87, Title III, §350, 115 Stat. 684 (Dec. 18, 2001)

United States - Mexico border, until certain events listed therein occur. Applications for truck operating permits and investments, require Mexican citizens to designate their national origin thereon, enabling D.O.T. to separate these applications for non-processing. These application requirements are codified at 49 C.F.R. §1182.2(a)(10). The designation of national origin on the application is not required for applicants from other countries.

Annex 1[7] of NAFTA is the section that authorizes Mexican domiciled trucks to enter the U.S. and operate within the country. Specifically, it allows for operation within the border states of California, Arizona, New Mexico and Texas beginning December 18, 1995, and for operation within the entire U.S. beginning January 1, 2000. Annex 1 also allows for Mexican citizens to submit applications for investment in, ownership of, or control of United States domiciled trucking firms beginning December 18, 1995.

## II. Claims of the Parties

Plaintiffs claim a violation of their due process and implied equal protection rights of the Fifth Amendment of the United States Constitution under a *Bivens* theory. In *Bivens v. Six Unknown Federal Narc. Agents*, 403 U.S. 388 (1971), the Supreme Court recognized an implied right of action directly under the Constitution to remedy a Fourth Amendment violation, allowing plaintiffs in that case to maintain a damage suit directly against the federal officers in their individual capacities. A *Bivens* action is a judicially created cause of action for violation of

---

[7]North American Free Trade Agreement, December 18, 1992, Annex 1, 32 I.L.M. 605.
"Phase-Out: Cross-Border Services
A person of Mexico will be permitted to obtain operating authority to provide:
(a) three years after the date of signature of this Agreement, Cross-Border truck services to or from border states (California, Arizona, New Mexico and Texas), and such persons will be permitted to enter and depart the territory of United States through different ports of entry;
(b) three years after the date of entry into force of this Agreement, Cross-Border scheduled bus services; and
(c) six years after the date of entry into force of this Agreement, Cross-Border truck services."

constitutional rights against federal agents, similar to the statutory cause of action against state actors in 42 U.S.C. §1983. Plaintiffs claim that the Defendants discriminated against them in failing to process and approve applications for operating and investment permits based on their national origin and that such discrimination was a violation of their equal protection rights under the Fifth Amendment. In addition, Plaintiffs argue that Defendants refusal to process and approve permits was a denial of their due process rights. One defendant in particular, Berriochoa Lopez, was forced to sell his partnership interest in a United States domiciled trucking firm because the firm's permit application was in jeopardy as long as Mr. Lopez continued to be an owner. Defendants contend that NAFTA and its implementing legislation is United States law which confers upon them a property right, which is being withheld in violation of the law and without opportunity to have a hearing.

Plaintiffs also make a claim for violation of their civil rights under 42 U.S.C. §1981, which provides, "...All persons within the jurisdiction of the Unites States shall have the same right in every State and Territory....to the full and equal benefit of all laws and proceedings...". Plaintiffs allege they suffered discrimination based national origin in violation of §1981 as their applications were not processed.

Defendants respond by arguing that Plaintiffs have no private right of action for damages against individual federal officials to remedy the alleged constitutional violation associated with NAFTA. Further they contend that Plaintiffs have failed to establish personal jurisdiction over any defendant and there is no respondeat superior in constitutional tort cases. Lastly, Defendants state that Plaintiffs have failed to articulate a clearly established constitutional right and therefore Defendants are entitled to qualified immunity.

### III. Standard of Review

*A. Lack of Jurisdiction*

In responding to a motion to dismiss for lack of jurisdiction, the plaintiffs bear the burden of establishing the district court's jurisdiction over defendants. *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir.1983).

Motions filed under Rule 12(b)(1), challenge the subject matter jurisdiction of the district court. Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. U.S.*, 281 F.3d 158, (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)). In instances where a Rule 12(b)(1) motion is filed in conjunction with another Rule 12 motion, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any other issue. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998).

Motions filed under Rule 12(b)(2) challenge personal jurisdiction over the defendant. Although the plaintiffs bear the burden of proof, it is not necessary for them to "establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient". *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, (5th Cir. 2000) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all

conflicts in the facts must be resolved in favor of the plaintiffs. *DeMelo* at 1270-71.

*B. Failure to State a Claim*

Motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Tanglewood East Homowners v. Charles-Thomas, Inc.*, 849 f.2d 1568, 1572 (5th Cir. 1988)). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the statement of the claim for relief, not the facts that support it. *See Nevarez v. United States*, 957 F.Supp. 884, 889 (W.D. Tex. 1997). When ruling on a Rule 12(b)(6) motion, this court must liberally construe the complaint in favor of the plaintiff and assume the truth of all well-pleaded facts. *See Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002). The court may not dismiss a plaintiff's action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Southern Christian Leadership Conference*, 252 F.3d at 786 (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)). A plaintiff's conclusory allegations or legal conclusions masquerading as factual assertions are insufficient to defeat a motion to dismiss. *See id.*

### IV. Jurisdiction

*A. Subject Matter Jurisdiction*

Plaintiffs contend that federal court jurisdiction is proper in this case as both of their claims involve a federal question. Under 28 U.S.C. §1331, district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Plaintiffs are claiming a violation of their rights under the Fifth Amendment to the United States Constitution and under 42 U.S.C. §1981, which specifically provides for equal protection under the law. Consequently, there is subject matter jurisdiction in this case.

*B. Personal Jurisdiction over the Defendants*

Plaintiffs have brought their complaint against the following defendants: Norman Y. Minetta, Secretary of Transportation; Mary E. Peters, Administrator Federal Highway Commission; and Joseph M. Clapp, Administrator Federal Motor Carrier Safety Administration. It is not clear from the pleadings whether Plaintiffs intended the suit to be brought solely against Defendants in their official capacities, solely against them in the their individual capacities, or against them in both capacities. Plaintiffs believe that all three Defendants maintain their residences in Washington, D.C. Service of process was made on each Defendant at their respective place of employment in Washington, D.C. and on the United States Attorney General.

The reach of federal jurisdiction over non-resident defendants requires a two-step inquiry. First, the law of the forum state must provide for such jurisdiction and second, the exercise of jurisdiction under state law must comport with the dictates of the Fourteenth Amendment due process clause. *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir. 1984).

The Texas Long Arm Statute[8] authorizes personal jurisdiction to the extent it complies with due process. The exercise of personal jurisdiction comports with due process when " (1) that defendant purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).

### 1. *Individual Capacity*

In Plaintiffs' action against the Defendants as "individuals", Plaintiffs must be able to demonstrate personal jurisdiction over Defendants in their individual capacity. In

---

[8] TEX. CIV. PRAC. & REM. CODE §17.041-17.045.

analyzing personal jurisdiction over Defendants as individuals, for claims under both 42 U.S.C. §1981 and *Bivens*, it is clear that there is none. The minimum contacts aspect of the personal jurisdiction analysis can be established through either "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction." *Wilson v. Belin*, 20 F.3d 644, (5th Cir. 1994). In cases involving specific jurisdiction, i.e., exercise of personal jurisdiction over a defendant in suit arising out of or related to defendant's contacts with the forum, the court must examine the relationship between defendant, the forum, and the litigation. In cases involving general jurisdiction, i.e., exercise of personal jurisdiction over a defendant in a suit not arising out of or related to defendant's contacts with the forum, defendant's contacts with the forum are examined to determine whether they are sufficiently systematic and continuous as to support reasonable exercise of jurisdiction. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, (5th Cir. 1985).

Specific jurisdiction is not possible in this case, as the acts or omissions claimed to have been committed by Defendants which give rise to the cause of action are not alleged to have taken place in Texas. The facts, as presented by the Plaintiffs, do not specify where the application was made available, where Defendants mailed the application, or where the government's central processing unit is located. As a result, it cannot be determined from the information provided in this case where the failure to act took place. The argument, made by Plaintiffs, proposes that the failure to act stems from an administrative policy, emanating from D.O.T. and extending to all field offices in the entire United States, including Texas. However, as Defendants have been sued in their individual capacities, there is no relation between them and the web of government field offices scattered throughout the states. The only connection that the Defendants have to Texas, are those they have derived through their employment with the

U.S. government in an official capacity. As a result, the acts giving rise to this cause of action, did not stem from Defendants' individual contacts with the forum state.

Plaintiffs also argue for personal jurisdiction over Defendants based on general jurisdiction. General jurisdiction may exist even though the acts giving rise to the particular cause of action did not take place in the forum in which suit is brought. When the issue is one of general jurisdiction the defendant's contacts with the forum are examined to determine whether they are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). *See also, Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). As individuals, the Defendants have not had systematic and continuous contacts with the state of Texas. Plaintiffs do not present any facts which demonstrate Defendants physical presence in the state, personal dealings or contracts with persons residing in Texas, or any other contact, much less contacts that are systematic or continuous.

What the facts as presented do show is that the individual Defendants do not reside in Texas, they have not purposely established minimum contacts in Texas, nor have they availed themselves of the benefits of the state of Texas. *See Tinsley v. Commissioner, I.R.S.*, 1998 WL 59481, (N.D. Tex.1998) (no jurisdiction over *Bivens* defendant under the Texas Long Arm Statute where the acts or omissions occurred in Washington D.C. and no defendant established minimum contacts in Texas). There is no personal jurisdiction over Defendants in their individual capacities.

### 2. *Official Capacity*

#### a. *Plaintiffs' Claim under 42 U.S.C. §1981*

To the extent that Plaintiffs have named each Defendant in an "official" capacity, it has been held that a claim against federal officials in their official capacities is the equivalent of a claim against the agency itself. *See Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). However, there is disagreement among the district courts and the circuit courts as to whether a §1981 claim can be brought against the federal government itself or its agencies. It is important to note the distinction between 42 U.S.C. §1981, §1982, and §1983, when determining who may be liable under the statute. Some courts have improperly substituted a holding that pertains exclusively to one type of claim, in order to determine another. For example, the court in *Kurylas v. U. S. Dept. of Agriculture*, 373 F.Supp. 1072 ( D.D.C. 1974), finds that the federal government can be subject to a claim under §1981, by citing *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). ( holding that §1982 applies to the federal government and the District of Columbia, while §1983 does not).

Another point of contention is the effect of the 1991 Amendment[9] to §1981 which added the stipulation that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. §1981(c). The court in *Davis-Warren Auctioneers, J.V. v. F.D.I.C.* 215 F.3d 1159 (10th Cir. 2000), points out that it, along with several other courts has adopted the view that the effect of the 1991 Amendment is that §1981 does not cover discrimination under color of federal law. *See Davis v. United States Dep't of Justice*, 204 F.3d 723, 725-26 (7th Cir.2000) (finding that the language of § 1981(c) precludes application of the statute to alleged discrimination under color of federal law); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir.1998), cert. denied, 525 U.S. 1138, 119 S.Ct. 1026, 143 L.Ed.2d 37 (1999) (same); *Williams v. Glickman*, 936 F.Supp. 1, 3-4 (D.D.C.1996)

---

[9]R.S. § 1977; Pub.L. 102-166, Title I, § 101, Nov. 21, 1991, 105 Stat. 1071.

(same).

In the case of the 5th Circuit and the district courts in Texas, there has also been some confusion on the issue. Starting with *Penn v. Schlesinger*, 490 F.2d 700 (5th Cir. 1973) (reversed on rehearing on other grounds by *Penn v. Schlesinger*, 497 F.2d 970 (5th Cir. 1974)), the court held that because §1981 and §1982 were sister statutes, §1981 must also bar discrimination by the federal government. The court went on to point out that a violation of §1981 by federal officials must be deemed an ultra vires action and any discriminatory action by them is therefore, not the conduct of the sovereign. Nine years later a district court, following the reasoning in *Penn,* allowed a §1981 suit to be brought against the Secretary of the Department of Housing and Urban Development. *Young v. Pierce*, 544 F.Supp.1010 (E.D.Tex. 1982).

Although it is unclear in this circuit whether a §1981 suit can properly brought against the federal government, as there is no case on point after the 1991 Amendment took effect, there still remains the hurdle of sovereign immunity. It has been clearly established that the suits against federal officials in their official capacities are considered suits against the federal government agency itself. *See Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978); *Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 380 (5th Cir.1987). Further, it has been established that a suit against a federal agency is actually a suit against the United States. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Tinsley v. Commissioner of I.R.S.* 1998 WL 59481 (N.D.Tex.1998); *Nowangoro v. Department of the Army*, 952 F.Supp. 394, 397 (N.D.Tex.1996); *Tinsley v. Pittari*, 952 F.Supp. 384, 389 (N.D.Tex.1996). Most recently a district court in *Harris v. U.S.*, 2002 WL 824277, (N.D.Tex. 2002) held that "...official capacity claims for money damages based upon allegations of

constitutional violations, are barred because they are considered suits against the United States which has not waived its sovereign immunity for such claims".

### b. Plaintiffs' Claim under Bivens

The very nature of a claim under *Bivens* is that it allows plaintiffs to reach federal defendants in their individual capacities. The Supreme Court has stated that official capacity suits against federal officials is tantamount to pleading an action against the entity of which the officer is an agent. The court in *FDIC v. Meyer*, 510 U.S. 471, 483-86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), declined to extend Bivens to allow a claim against federal agency. The purpose of *Bivens* was to deter the officer and not the agency and as such, the claim must be brought against the individual. *Id.* at 485.

## V. Failure to State a Claim

### A. Violation of Plaintiffs' Civil Rights under 42 U.S.C. §1981

Plaintiffs claim that the Defendants failed to approve applications for operating and investment permits based on Plaintiffs' national origin and that such discrimination deprived them of their federal civil rights under 42 U.S.C. §1981, which states:

> (a) Statement of equal rights.
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Key to interpreting this provision are the words, "all persons within the jurisdiction of the United States...". In defining which persons have constitutional rights, courts have consistently drawn certain distinctions between United States citizens, resident aliens, and illegal aliens physically

present in the United States. A plethora of cases[10] have allocated certain rights to each group. However, it is crucial to point out that Plaintiffs in this case do not fall into any of those categories, as they are residents and citizens of Mexico, physically residing outside the jurisdiction of the United States.

Plaintiffs fail to cite any authority for the proposition that a citizen and resident of a foreign country, not physically present within the United States, is a "person(s) within the jurisdiction of the United States..." entitled to make a claim under 42 U.S.C. §1981.

Plaintiffs point to *U.S. v. Verdugo*, 494 U.S. 259, 262 (1990), a case in which a citizen and resident of Mexico was arrested by the Mexican authorities, then transported to the United States where he was arrested by the American authorities. While Verdugo was awaiting prosecution in the United States, DEA agents searched his home in Mexico and seized certain documents. The Supreme Court held in *Verdugo* that the Mexican citizen had no rights under the Fourth Amendment because: (1) it does not apply to the search and seizure, by United States agents, of property owned by a nonresident alien and located in a foreign country; and (2) the Mexican citizen had not established significant voluntary connections with the United States which would entitle him to protection under its Constitution.

In its analysis, the *Verdugo* court used the test set out in *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (aliens have been determined to enjoy certain constitutional rights and protections when they have come within the territory of, "and" have developed substantial connections with this country). Plaintiffs in this case, single out the "significant connection" language used in *Plyer* and *Verdugo*, and utilize it as the sole test of

---

[10]*Torao Takahashi v. Fish and Game Commission*, 334 U.S. 410, 68 S. Ct. 1138, 92 L.Ed. 1478 (1948); *Guerra v. Manchester*, 498 F.2d 641 (5th Cir. 1974), *Commercial Standard Fire & Marine Co. v. Galindo*, 484 S.W.2d 635, (Tex. Civ. App. 1972, writ ref'd).

whether an alien has rights under the Constitution. This reasoning is faulty. First, *Verdugo* deals with the application of the Fourth Amendment to a search occurring in a foreign country, this case deals with a violation of Fifth Amendment rights in the United States. Second, the Mexican citizen in *Verdugo* was physically present in the United States. In this case, Plaintiffs are not. Third, *Plyer* is a two prong test consisting of physical presence "and" voluntary connection. Plaintiffs erroneously single out voluntary connection as the only requirement of an foreign citizen attempting to establish constitutional rights.

The case law dealing with the definition of "persons within the jurisdiction of the United States", for causes of action under §1981, pertain exclusively to resident aliens and illegal aliens within the territory of the United States and not citizens and residents of foreign countries. This is a threshold requirement of this particular cause of action and without it, Plaintiffs cannot seek protection under it.

Additionally, §1981 was initially intended to address racial discrimination. However, in some circuits it has been extended to cases of discrimination based on alienage or national origin. This is not the case in the Fifth Circuit, which has continued to limit application of §1981 to cases involving racial discrimination. *See Olivares v. Martin*, 555 F.2d 1192 (5th Cir. 1977); *Bullard v. Omi Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981); *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F2d 731 (5th Cir. 1986); *Barbre v. Garland Independent School Dist.*, 474 F.Supp. 687 (N.D. Tex. 1979). Plaintiffs in this case are alleging a violation of §1981 as a result of discrimination based on their national origin. Plaintiffs have not stated a proper claim under §1981. Plaintiffs have failed to establish any other facts which would entitle them to fall within the purview of §1981.

*B. Violation of Plaintiffs' Fifth Amendment Rights Under a Bivens Theory*

Plaintiffs claim that the Defendants failed to approve applications for operating and investment permits based on their national origin and that such discrimination was a violation of their equal protection and due process rights under the Fifth Amendment. Plaintiffs' cause of action is based on the case *Bivens v. Six Unknown Federal Narc. Agents*, 403 U.S. 388 (1971), in which, as stated earlier, the Supreme Court recognized an implied right of action directly under the Constitution to remedy a Fourth Amendment violation, allowing plaintiffs in that case to maintain a damage suit directly against the federal officers in their individual capacities.

Before analyzing the validity of a Bivens action in this case, it must first be determined whether the Plaintiffs are entitled to protection under the Constitution. The Fifth Amendment begins by designating the class of individuals to whom it extends protection. "No person shall... be deprived of life, liberty, or property...". Once again, there are numerous cases[11] which hold an alien, registered or illegal, who is physically present in the United States is considered a "person" in context of the Fifth Amendment. The importance of physical presence is discussed in *Johnson v. Eisentrager*, 339 U.S. 763, 770-71, 70 S.Ct. 936, 94 L.Ed. 1255 (1950), (holding that German nationals, alien enemies, confined in custody of United States Army in Germany had no right to writ of habeas corpus) in which the court pointed out "at least since 1886, we have extended to the person and property of resident aliens important constitutional guaranties..." but, "...in extending constitutional protections beyond the citizenry, the Court has been at pains to point out that it was the alien's presence within its territorial jurisdiction that gave the Judiciary

---

[11]*Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S. Ct. 472, 97 L.Ed. 576 (1953); *Matthews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *U.S. v. Husband R.(Roach)*, 453 F.2d 1054 (5th Cir. 1971); *Lynch v. Canatella*, 810 F.2d 1363 (5th Cir. 1987); *U.S. v. Alvarado - Machado*, 867 F.2d 209 (5th Cir. 1989).

power to act".

Plaintiffs once again fail to cite relevant authority for their proposition that citizens and residents of a foreign country, not present in the jurisdiction of the United States are entitled to protection under the Fifth Amendment of the United States Constitution. It must be noted, however, that this issue is distinct from the inquiry as to whether there is a recognized property right held by the Plaintiffs. There are cases such as *Sardino v. Federal Reserve Bank of New York,* 361 F.2d 106, (2d Cir. 1966) and *Russian Volunteer Fleet v. United States*, 282 U.S. 481, 489, 491- 492, 51 S.Ct. 229, 75 L.Ed. 473 (1931), in which the courts have recognized that nonresident aliens owning property within United States are entitled to protection of the Fifth Amendment provision that no person shall be deprived of property without due process of law. The case law is quite clear with respect to the rights of non-citizens owning real and personal property physically located in the United States.

However, plaintiffs have failed to demonstrate that there is any authority for the proposition that the opportunity to have a permit processed and approved as a matter of right is property of the type protected by the 5th Amendment. The Constitution does not create property interests, "...rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Winkler v. DeKalb County*, 648 F.2d 411 (5th Cir. 1981) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

In determining what is "property" under the due process clause in this case, it is not clear that the federal government has explicitly created a property right in this permit. The court in *Winkler* made clear that a unilateral expectation of a benefit does not rise to the level of a protected interest, as only a mutually recognized entitlement will receive constitutional

protection. Nor is it clear whether the federal government has restrained its own discretion in issuing the permit, thereby possibly creating a legitimate claim of entitlement to it. See *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir.1991) ("When analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given the decisionmaker ....").

### VI. Conclusion

IT IS therefore **RECOMMENDED** that Defendants' Motion to Dismiss (Docket No. 12) be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 28th day of October, 2002.

_____
John Wm. Black
United States Magistrate Judge